## Kraver, et al. v. Smith.

### Same v. Mitchell.

### Same v. Littlepage.

### Same v. Smullen.

### Same v. Wright.

### Same v. Coffee, et al.

### Same v. Gudgell.

### Same v. Martin.

### Same v. Smith.

(Decided May 14, 1915.)

## Appeals from Henderson Circuit Court.

1. Waters and Water Courses—Drains—Riparian Rights.—The mere straightening of a natural water course, under a proceeding of the county court, and the control of it by the Drainage Commissioners for the purpose of keeping it in repair, and free from obstructions, does not deprive the holders of the lands, through which it runs or upon whose lands it borders, from the riparian right to the reasonable use of its waters for watering stock, where the process of straightening of the stream does not disconnect it from the lands.

2. Nuisance.—One can not by prescription obtain the right to create and continue a public nuisance, as each day it is continued is a new offense.

3. Nuisance—Public Nuisance—Recovery of Special Damages.—One can not maintain an action for the injuries arising from a public nuisance, which are suffered by all the public, alike, but one suffering special damages from a public nuisance may maintain an action to recover them.

4. Municipal Corporations—Sewers.—One can not connect a private sewer with the sewerage system of the city, without the consent of the city, and the city has authority, by ordinances, to protect its sewers from invasion, and to make reasonable regulations as to the use of the sewers, and as to the character of sewage which may be discharged into them.

5. Municipal Corporations—Sewers.—A city can require the property holders in it to connect their private sewers with the system of the city.

6. Nuisance—Sewers—Municipal Corporations.—One can not be made liable for a nuisance created by the discharge of his sewage into a creek, when his sewage passes into the sewers of the city, and from the sewers of the city into the creek, where he is required to connect his private sewer with that of the city, and

does so with the consent of the city, and under the supervision of its officials, and where there are no regulations as to the character of the sewage which may be run into the city sewer. Under such circumstances it is the duty of the city to take care of the sewage.

VANCE & HEILBRONNER and N. P. TAYLOR for appellant, Kraver.

JOHN C. WORSHAM for appellant, City of Henderson.

S. V. DIXON, W. P. McCLAIN and DORSEY & DORSEY for appellees.

OPINION OF THE COURT BY JUDGE HURT—Reversing in part and affirming in part.

These are nine of the twenty suits in the Henderson Circuit Court, wherein the plaintiffs sought a recovery against the defendants for various sums in damages, on account of injuries suffered by them, as alleged, by reason of the defendants, who were Henry Kraver, the Kentucky Peerless Distillery Company, and the City of Henderson, creating a nuisance in and along the banks of Canoe Creek, by the discharge from their respective sewers of filth, human excrement and slop from the distillery into the creek, and which they alleged, so poisoned and polluted the water, and poisoned the atmosphere, about their respective places of residence, with nauseating odors, that it rendered the water of the stream unfit for stock water, and diminished the value of their homes and the use of same, and rendered their occupancy of their homes very uncomfortable.

The nineteen suits were consolidated, and heard together by agreement of parties in the court below at the same time by one jury, and the trial resulted, so far as the appellees in the above styled cases were concerned, in a verdict by the jury and a judgment of the court in favor of Geo. F. Smith against the appellants, Henry Kraver and the City of Henderson, in the sum of $380.25, each; in favor of W. W. Mitchell against the appellants, in the sum of $285.18, each; in favor of Z. H. Littlepage, against appellants, in the sum of $251.55, each; in favor of M. F. Smullen, against appellants, in the sum of $380.25, each; in favor of E. B. Wright, against appellants, in the sum of $200.68, each; in favor of L. F. Coffey, et al., against appellants, in the sum of $306.31, each; in favor of Harry Gudgell, against appellants, in the

sum of $251,55, each; in favor of Oscar Martin, against appellants, in the sum of $507.00, each; in favor of Ed. L. Smith, against appellants, in the sum of $380.25, each.

The appellants, Henry Kraver and the City of Henderson, each filed grounds and made motions to set aside the verdict and to grant them a new trial, which were overruled by the court, and exceptions taken. The appellant, Kraver, also, before filing the grounds for a new trial and entering his motion for same, moved the court to enter a judgment for him *non obstante veridicto*, which was overruled and to which he excepted. Each of the appellants prayed an appeal from the judgments rendered against them in favor of Martin, and in the other cases above stated, filed the transcrips, and entered a motion for an appeal from the judgments against them, which motion was passed to the merits.

The appellant, Henry Kraver, set out as his grounds for a new trial: First, because the damages allowed the appellants were excessive and appeared to have been under the influence of passion and prejudice; second, because the verdict is not sustained by sufficient evidence; third, because the verdict is contrary to the instructions given by the court; fourth, because the court erred in giving instructions Numbers 1, 2, 3, 4 and 5, to the giving of which he objected and excepted at the time; fifth, because the court erred in refusing to give instruction "A," offered by the appellant; sixth, because the court erred in refusing to give a peremptory instruction to the jury in favor of this appellant at the close of all the evidence; seventh, because the court erred in admitting incompetent and irrelevant evidence against him, to which he objected and excepted at the time; eighth, because the court erred in refusing to admit competent and relevant evidence offered by him; ninth, because the court erred in overruling his motion for a judgment in his favor, notwithstanding the verdict; tenth, because the court erred in not rendering judgments in conformity with the verdicts.

The City of Henderson alleged as its grounds for a new trial that the damages were excessive; that the court erred in giving instructions 1, 2, 3 and 4; that the verdicts were not sustained by sufficient evidence; and in admitting incompetent and irrelevant evidence upon the trial; and in refusing competent and relevant evidence offered by it upon the trial.

A part of the appellees were the owners of the lands upon which they lived, and the others were tenants occupying lands under leases. The allegations of those owning lands were that Canoe Creek was a natural stream of water, either running through their lands or bordering thereon, and the same allegations were made by such as were tenants in regard to the premises occupied by them. Each appellee, also, alleged in his petition that the city of Henderson had constructed a sewerage system, with sewers ending at Canoe Creek, from which was discharged the contents of the closets, baths and all of the filth and offal of the city into Canoe Creek, and that the contents of the sewers were carried out into Canoe Creek by the waters from the waterworks, which were owned and operated by the city; that the appellant, Henry Kraver, was the president of the Kentucky Peerless Distillery Company, and operated the distillery under a fifty-year lease from the company, and that he had, also, negligently constructed a sewer, by which he discharged all of the slop from the distillery into Canoe Creek, and that this was accomplished by the assistance of the water system of the city of Henderson, which furnished water to him for distillation purposes, and that the defendants, city of Henderson and Kraver, jointly and singly, wilfully and wantonly had discharged, by means of their respective sewers, into Canoe Creek, such a quantity of filth, offal, human excrement, and slop from the distillery, that it had poisoned the waters of the stream, killed the fish therein, and had thereby created such a stench that it poisoned the air which surrounded their homes, rendering them scarcely habitable, and rendered the waters unfit for use, so that their stock were unable to use it, and they had to provide water for their stock elsewhere; created sickness of themselves and families, and rendered their homes of less value to them; that the city of Henderson, by an ordinance, required all citizens along its sewerage system to connect with it, and thereby caused all of the filth from their premises, water closets, and bath tubs to go into Canoe Creek; that the appellants for five years last past had wilfully and wantonly allowed the filth discharged by them into Canoe Creek to remain there an unreasonable and unnecessary length of time, which resulted in the conditions of the stream, as above stated.

The city of Henderson, by its answer, traversed the affirmative allegations of the petitions, and in addition

to that alleged that it had constructed sewers, which emptied into Canoe Creek, because it was the natural drainage for the sewage; that the sewers were well constructed and reasonably used, and that the sewage drained into the creek, which was the same or similar to that which had been drained into the creek for more than fifteen years before the institution of the suits, and that it had obtained and continued to exercise its right to drain its sewage into the creek by continuously doing so, and relied upon the statute of limitations of fifteen years as a bar to the appellees' causes of action. It, also, plead that the Henderson Cotton Mills emptied its sewage into the creek, and that it contributed, and was in part responsible for the conditions complained of by the appellees; that for the purpose of diverting the discharge of its sewage into Canoe Creek, that it had constructed a sewer from a point on the bank of the creek to the Ohio River, and put in a receiving well and installed a pump, and began to pump the contents of the sewers, which had formerly been discharged into the creek, through the well and new sewer into the Ohio River; that thereafter the appellant, Kraver, without its knowledge or consent, and for the fraudulent purpose of invading its sewers and imposing upon it the duty of disposing of the sewage from his distillery, constructed a sewer from his distillery to the sewer of the city, which runs down Second street, and has an outlet into Canoe Creek, and into the receiving well mentioned above, and connected his distillery sewer with the sewer of the city, and that as soon as the city had knowledge of the connection, that it notified Kraver to disconnect his sewer from the city sewer, which request Kraver disregarded, and that thereupon it notified Kraver, that if the disconnection was not made within thirty days, the city would make the disconnection, and that it would have done so, but for the fact that Kraver instituted a suit to enjoin the city from severing the connection, and that the suit was then pending; that after Kraver had connected his sewer with the city sewer, and before the city's sewer from the receiving well to the river was completed, the sewage from the distillery plant was conveyed through the city sewer into Canoe Creek, and that this was without the knowledge and consent of the city, and that the sewage from the distillery was either wholly or in part the cause of the conditions of the creek com-

plained of by the appellees; and that after the sewer and receiving well were put in operation, by which the sewage was to be diverted from the creek and conveyed into the Ohio River, the appellant, Kraver, conveyed from his distillery into the city's sewer, sewage containing such a large amount of solid matter that it broke the pump provided in the receiving well by the city, and the sewage which the city would and could have disposed of by pumping to the river, had to be permitted to and did drain into Canoe Creek, as well as the sewage from the distillery operated by Kraver; and that if the appellees were damaged as alleged in their petitions, the damage was due to the drainage into the creek of the sewage which came from Kraver's distillery plant, and not by any act of the city, and made its answer a cross-petition against Kraver, and asked a judgment against him for any amounts which might be recovered of it by the appellees.

The appellant, Kraver, relied for a defense upon a denial of the allegations of the petitions and of the cross-petition of the city of Henderson against him, and upon the further allegation that Canoe Creek was not a natural water course, but a ditch dug and controlled by the drainage board of the county, and in which the appellees had no riparian rights, and that the injuries complained of were a public nuisance for which appellees had no cause of action, and the further fact that the sewage from his distillery which was complained of had, since August, 1912, been discharged by a sewer from the distillery into the sewer of the city, and for that reason he was not responsible for any injuries caused by a flow of the slop from his distillery into Canoe Creek after August, the time of the construction of his sewer and the connection made by it with the city's sewer.

Appellant, Kraver, also, relied upon the fact that by a judgment of the circuit court, upon a suit brought by him against the city, which had been rendered enjoining the city from disconnecting his private sewer from the sewer of the city, which he insisted eliminated the contention that he did not have the right to connect his sewer with the city sewer, and to discharge the slop from his distillery into it. He, also, for a defense claimed that he was a mere continuer of the nuisance, and had never been requested to abate it.

The appellees, by amended petitions and replies, claimed that while the city had undertaken to divert its

sewage from Canoe Creek by the installation of the sewer from Canoe Creek to the Ohio River and the pump and well, mentioned, that it was done negligently and inefficiently, and did not on that account perform the work required of it, and that it, also, permitted Kraver to discharge the slop from his distillery into it, and that the same sewage was discharged into Canoe Creek after the alleged attempt of the city to divert it, as it had done before said attempt, and that it overflowed the well and emptied into Canoe Creek, as theretofore, and there it was permitted to remain for an unreasonable and unnecessary length of time, and which exaggerated the bad conditions of the creek, theretofore existing, and added to the injuries which appellees suffered. These allegations were all controverted by Kraver and the city of Henderson.

While the petitions of the appellees sought to recover damages for different periods of time, arising from the length of time they owned or were lessees of their respective lands, and the different times at which their suits were filed, the court, by its instructions, limited their recovery to such time during which each of them was the owner or holder of his respective tract of land, and ceasing at the time of the filing of his suit.

No proof was offered connecting the Kentucky Peerless Distillery Company with having caused any of the injuries complained of, and the court peremptorily instructed the jury to find for it, which, under the instructions of the court, it did.

The evidence offered proved that Canoe Creek was a natural water course, passing through or bordering upon the lands of each of the appellees, but that at some time or other, which the evidence did not disclose, a portion of the stream had been straightened in some places, under a proceeding in the county court, and that the stream was under control, for the purpose of keeping it in repair, and removing obstructions, of the board of drainage commissioners. It had not been materially altered from its original course, and it does not appear that the stream has been materially changed where bordering on or passing through the lands of the appellees. The proof, also, showed that for several years last past the city of Henderson had three sewers which emptied into the creek, and which carried off a large part of the slop, waste water, filth, contents of closets and baths of

the city and deposited them in the creek. For several years last past until August, 1912, the appellant, Kraver, has had a private sewer extending from the distillery into the creek, which carried off during the times of the operation of the distillery very large quantities of slop arising from the distillation of corn and other grain. This slop, when it first leaves the distillery, is milky white in color, and flows easily, but when it reaches the creek it settles to the bottom, and by exposure to the action of the water and air, after a time the solid elements in it turn very black, decompose and give off a very nauseating odor. On account of the current of the stream being sluggish, the solid elements of this slop settle and form a substance upon the bottom of the stream, which continues, intact, for months thereafter, and the fish in the stream coming in contact with this decomposed slop from the distillery and the filth and excrement from the city's sewers, die, and their decomposition results in an addition to the nauseating smells arising from the stream. High water in the stream has the effect to wash out these irritating causes and to clarify the water. From the first or middle of April to late in the autumn of the year, the smell from the stream is annoying and sickening, requiring the appellees and their families, when eating or retiring at night, to close their doors to keep the unpleasant odors away from them. Cattle refuse to drink the water of the stream and the appellees lose its use on that account.

In 1911 the appellant, Kraver, testified that he suggested to Mr. Thompson, the mayor of the city, that it ought to build a sewer from his distillery to Second street, and Thompson promised to do so, but failed to do so, and in 1912 he again suggested to him that the city ought to build the sewer, and he replied that the city had no money to spend for it. Thereafter, on the 23rd day of July, 1912, a notice was served upon him as the president of the distillery company, signed by the secretary and executive officer of the city board of health, notifying and requiring it to abate and remove within thirty days a certain nuisance on its property, and to tap the sewer, saying that the nuisance had been declared by the board of health prejudicial to the public health, and warning him that upon its failure to do this, it would subject him to the penalties imposed by the statutes of the Commonwealth of Kentucky. On the

27th day of July, 1912, the distillery company made written application to the city engineer of the city, requesting permission to tap the Sandefer Mill and Canoe Creek sewer at a point about three hundred and sixty feet west of Canoe Creek, with a ten-inch pipe, and agreeing to comply with the rules as stipulated in the ordinances, and not to permit any one to connect with the tap made by him, unless permitted by the common council. This application was approved by the city engineer on the same day, and on the same day the distilling company received a writing signed by the city clerk, stating that the distilling company having complied with the ordinance governing the tapping of sewers in the city of Henderson, it was authorized to tap the Sandefer Mill and Canoe Creek sewer, on————side of———— about three hundred and sixty feet west of Canoe Creek between————streets, the work to be done under the supervision of the city engineer. Relying upon this procedure, Kraver, as the president of the distilling company, in the month of August, 1912, caused a sewer to be constructed from the distillery to the city sewer, and thereafter, and up to the time of the bringing of these suits, the slop from the distillery was discharged into the city's sewer. The city's sewer led into the creek, and the distillery slop passed through it into the creek, in place of through the distilling company's private sewer, as it had done theretofore, up until the 8th day of May, 1913, by which time the city had constructed a sewer from the bank of Canoe Creek into the Ohio River, and had connected its sewers which ran into the creek in such a way as to cause all of their contents to be deposited in a well near the bank of the creek, wherein it installed a pump, which pumped the contents of the well through the new iron sewer to the Ohio River, excepting when a heavy downpour of rain occurred, when portions of the sewage would continue to pass into the creek. On the 28th day of June the pump broke, and for five days, until it could be repaired, all of the sewage passed into the creek. In the well was fixed a screen made of three-quarter iron rods, through which the sewage would pass before reaching the pump, and for the purpose of preventing sticks and stones and other large obstructions from coming in contact with the pump. When the pump was found broken, investigation was made, and it was found that the solid portions of

the distillery slop had settled upon the floor of the well, against the screen, to the depth of from four to four and one-half feet, and as it was claimed by the representatives of the city, broke the screen and permitted sticks and tin cans to pass into and come in contact with the pump, causing it to break. After five days it was repaired, and the distillery having ceased to operate about two days thereafter, the pump was able to thereafter perform the service expected of it, and no further sewage passed into the creek.

On the trial the city offered to prove by its charter and by-laws, that the city clerk was without authority to authorize a property owner to connect with the city sewerage system, unless he was the owner of the property abutting upon the sewer, and that the property which appellant, Kraver, connected by the sewer built by him with the city's sewer, did not abut on the city sewer. This proof was objected to and the court sustained the objection, and refused to allow the city to prove it. The city, also, offered to prove that the city board of health had not condemned anything on the distilling plant or connected with it, as a nuisance, and had not authorized the secretary and executive officer of the board of health to serve any notice upon appellant, Kraver, to that effect, or to require the distilling company to connect its property with a city sewer. This was, also, objected to, and the objection sustained.

Both of the appellants, the city and Kraver, insist that Canoe Creek was not a natural water course, and for that reason the persons through whose lands it ran, or upon whose premises it bordered, had no riparian rights in it, and hence the court erred in instructing the jury, that one of the elements of damages, to which the appellees were entitled, was the loss of the reasonable use of the waters of the stream for watering their stock, if it was polluted to such an extent that it could not be used for that purpose. There is no evidence which disputes the fact of its being a natural water course, and has existed there at all times. A portion of the stream has been straightened, but it has, nowhere, been taken away from the lands of the appellees. A riparian owner has been defined to be one owning land, which is bounded by a natural water course, or through which a stream flows, and the rights to which such owner is entitled are appurtenant and annexed to the land, and the

person owning such lands is entitled to the natural flow of the water, unimpaired in quality, except as may be occasioned by reasonable use of the stream by other proprietors, and he has a right to make any use of the water, which is beneficial to himself, so long as he does not inflict any substantial injury to those below him upon the stream. 40 Cyc., 558-560-563; Redmon v. Forman, 83 Ky., 214; Jouett v. Renaker, 13 R., 782; Hicks v. City of Owensboro, 6 R., 225. To use water from such a stream, for the purposes of stock water upon the premises of the holder of the land has always been held to be a riparian right. The mere straightening of the stream or cleaning it out in order to facilitate the flow of the water, without separating it from the lands of the appellees, would not take away from them their riparian rights.

The contention that the nuisance created by polluting this stream and poisoning the atmosphere around it, and rendering the houses of the appellees uncomfortable, and causing sickness of the appellees and their families, and rendering the water unfit for stock and other purposes, is a public nuisance for which the appellants are not liable in damages, is not tenable. It has been uniformly held by this court, that the damages resulting from a public nuisance which affects all of the public alike, creates no cause of action, which a particular individual may rely upon for damages, for such injuries, but, it has always been held, that one suffering damages from a public nuisance which are special or peculiar to himself, may sustain an action for such injuries. Barr v. Stephens, 1 Bibb., 293; Cosby v. O. & R. R., 10 Bush, 291; L. & N. R. R. v. Cooper, 164 Ky., 489. The damage sought in this action is the loss of the use of the water from the creek, which is the peculiar property of the riparian owner, and the diminution in the value of his lands and his home by reason of the nuisance, is an injury falling upon the persons, so situated as to necessarily sustain such injury, and do not affect all the public alike.

The claim of a prescriptive right on the part of the appellants to run their sewage into the creek, and for that reason they were not liable in damages for a nuisance created by it, was not allowed by the trial court, and properly so, because there was no evidence offered upon which to base such a claim. The city, upon its part, offered no evidence upon that subject

at all, and if it had, it could not have been allowed as a defense, because, while the owners of the lands, adjacent to the creek, would have no right at any time to complain of the discharge from the city into the creek of the surface waters, which would naturally find an outlet into the creek, neither the city nor could Kraver claim to have a prescriptive right to turn the filth of the sewers, human excrement, slops, and other poisonous things into the stream. City of Henderson v. Robinson, 152 Ky., 245.

Proof was introduced by the appellant, Kraver, which tended to show that the distillery operated by him was located near the creek in 1880, and that its slops had been continuously discharged into the creek up to August, 1912, but the proof further shows that the character of the slops, which went into the creek previous to the year 1908 or 1909 did not pollute the waters nor create a nuisance, and it was only the character of the slops which had gone from the distillery into the creek since 1908, which polluted the stream and created the nuisance complained of.

It has been held that one creating a nuisance is liable to anyone, who is injured by it, but one merely continuing a nuisance, as the purchaser of property, which is a nuisance is not liable until he is requested to abate it. Ray v. Sellars, 1 Duvall, 256; West v. L. & N. R. R., 8 Bush, 406. The proof, however, showed that Kraver created this nuisance or assisted to create it, within five years before the bringing of the suits, by discharging into the creek a different kind of slop, with other ingredients, than that used theretofore, and besides had been sued for the same character of injuries before the bringing of these suits, and hence could not claim to be a mere continuer of a nuisance.

In the case of Fertilising Co. v. Hyde Park, 97 U. S., 668, the court, discussing the doctrine of prescription, as applying to a nuisance, which continued from year to year, said: "Every right, from absolute ownership in property down to a mere easement, is purchased and holden subject to the restriction that it shall be so exercised as not to injure others." "In such cases, prescription, whatever the length of time, has no application. Every day's continuance is a new offense, and it is no justification that the party complaining came voluntarily within its reach. Pure air and the comforta-

ble enjoyment of property are as much rights belonging to it as the right of possession and occupancy. If population, where there was none before, approaches a nuisance, it is the duty of those liable at once to put an end to it.''

This court, in the case of Ashbrook v. Com'th., 1 Bush, 140, where an indictment was had against one maintaining a public nuisance in the city of Covington, and it was shown that the nuisance consisted of maintaining a cattle pen and slaughter house, and that it had been so continued for thirty years last past, this court held the conviction proper, and said: ''The pursuit of a noxious trade is lawful, so long as it does not interfere with the rights of the public, but when it does so interfere with these superior rights, it becomes illegal, and no length of time can justify it, as its exercise is a daily renewal of the offense.''

In 29 Cyc., 1207, the doctrine is thus stated: ''There is no such thing as a prescriptive right to maintain a public nuisance, and hence prescription is no defense to a proceeding to abate a nuisance, either by public authorities or by a private individual, or to an action by a private individual for damages for the injury which he has received, or to an indictment against the person maintaining the nuisance.''

The motion of the appellant, Kraver, for a judgment in his favor, notwithstanding the verdict of the jury, was not based upon any good reason, as the pleadings sufficiently supported the verdict.

Both of the appellants objected to the instructions given, and both of them are insisting that the instructions of the court to the jury were prejudicial to them. Instructions numbers 1, 2, 3, 5, 6 and 7 were substantially correct and not susceptible of any just criticism, but instruction number four, as given by the court, was prejudicial, at least so far as it related to the appellant, Kraver. The appellant, Kraver, plead in his answer that a judgment had been rendered in his favor against his co-defendant, the city of Henderson, in the circuit court of the county, by which it was adjudged that he was entirely within his rights when he connected his distillery by a sewer with the city sewer, and that the judgment had never been vacated, modified, or set aside, and that he, for that reason, could not be held liable for any nuisance, which was set up in Canoe

Creek by any discharge of the slops from his distillery into it, after he connected it with the city sewer in August, 1912. The city of Henderson appealed from that judgment to this court, and it was affirmed by this court, by an opinion in the case of City of Henderson v. Kentucky Peerless Distilling Company, 161 Ky., 1. There was no error by the court below in excluding the evidence offered by the city in the trial of the case, at bar, attempting to show that the sewer from the distillery was wrongfully connected with the city sewer. The appellant, Kraver, offered an instruction in writing, in substance, directing the jury that it should not find against him any damages for injuries caused by the discharge of the distillery slops into the creek after he had connected the distillery with the city sewer. The court overruled his motion to so instruct the jury, and he excepted. There is no doubt, as contended by counsel, that the city had the power to control and regulate its drains and sewers, and that a property owner has no right to connect a private sewer with the city sewer without the consent of the municipality. There is no doubt, but what the city has authority after its sewers are constructed, to regulate their use, and protect them against injury and invasion, by ordinances, and, also, to regulate the character of the sewage which any property owner may discharge into the city sewer. Dillon on Municipal Corporations, Section 805; Tipton v. City of Shelbyville, 32 R., 1123; 28 Cyc., 919. The proof, however, in this case conclusively shows that the board of health of the city, with knowledge of the character of sewage passing from the distillery, by its executive officer, ordered appellant, Kraver, to make the connection, and that he did so by the authority of the city, and under the supervision of its engineering department. The city had not, by any ordinance, regulated the quantity or character of sewage which appellant, Kraver, was authorized to discharge into the sewer, and from the circumstances, it can be presumed only, that it was, intended that such sewage as came from the distillery was to pass into the city sewer. The instructions given by the court authorized the jury to find against appellant, Kraver, on account of any injuries arising from the passing of the sewage from his distillery into canoe Creek, up until the 8th day of May, 1913, at which time the city installed its well and pumping station, and

thereafter, if it believed that Kraver had negligently discharged a character of slop into the sewer, which caused the pump to break, when he, by the exercise of ordinary care, could have known that the pumping station was insufficient to carry off the sewage. In this we are of the opinion that the court was in error, as Kraver made the connection with the city sewer, with the knowledge, consent and direction of the city, and under the supervision of its engineering department, and thereafter it was the duty of the city alone to take care of the sewage.

In place of instruction number four, as to Kraver, the court should have, in substance, instructed the jury, that he was not liable, and that it should not find any damages against him on account of any injuries to the appellees, arising from nuisance created in the creek by the discharge of distillery slops, into the creek, after Kraver had, by his private sewer connected the distillery with the sewer, if all of his sewage passed into the city sewer, and did not escape into the creek from any private sewer, of his own, which connected with the creek.

Instruction number four was more favorable to the appellant, city of Henderson, than it was entitled to, and it, therefore, cannot complain of it.

For the reasons herein stated, the judgments of the appellee Martin, against the appellants is affirmed as to the city of Henderson, and reversed as to appellant, Kraver. The motion of appellant, Kraver, to grant an appeal, in each of the other cases, is sustained and the judgments, therein, against him are reversed. The motions of city of Henderson to grant it an appeal in the other said cases, is overruled. The causes are remanded to the court below with directions to proceed in conformity to this opinion.