Affirming.
The appellant owns a tract of land in Boyle county near the corporate limits of Danville and east of the railroad right of way belonging to appellee. Appellee owns a tract of land immediately west of the railroad mentioned. A stream of water runs through the tract of land owned by appellee, passes under its right of way, and through the land of appellant.
Appellant instituted one or more suits against the appellee claiming damage because of a number of injuries and trespasses on the land owned by him caused by the appellee. One or more of his causes of action alleged in his petitions grew out of the obstruction of the flow of the stream so that it interfered with the right of appellant to a full and free use of the water. Proof was heard, and the issues were submitted to a jury, which returned a verdict for the appellee. The verdict is conclusive that the land of appellant was not damaged by reason of any of the acts set up in the petitions and charged to appellee. The verdict was accepted by appellant as conclusive on the question of damages; but he has another question before us which he urges with more or less plausibility. *Page 341 
One of the alleged causes of action set up in his petitions was that appellee "placed a dam or obstruction across said creek on or near its railroad right of way and thereby has wrongfully and unlawfully impounded the waters of said creek and spring and has diverted them from their natural accustomed and ancient course and has prevented said waters from flowing into and upon and through the lands of the plaintiff and has thereby deprived him of the use and enjoyment thereof."
In his petitions appellant sought certain injunctive relief against appellee, alleging a succession of wrongs, injuries, and trespasses committed by appellee, and particularly seeking to obtain an injunction to restrain appellee's violating a written covenant entered into between it and appellant in 1916 at the time appellee purchased certain real estate from appellant. The suits were primarily to recover damages, but it is true that there are allegations looking towards injunctive relief. It is now the contention of appellant that, although the jury has decided that he had sustained no damages by reason of any act of appellee, yet he is entitled to injunctive relief because of the covenant in the deed executed by him to the appellee. It is his contention that there are cases when the violation of a covenant in a contract will be enjoined although it may not be established that damages will flow to one of the parties as a consequence of such violation.
The facts are that appellee purchased from appellant a tract of land in 1916 containing 172 acres, which is the tract referred to in the petition belonging to appellee as lying west of the railroad. Appellant, after selling that tract, owned about 19 acres of land on the east side of the railroad, which is the land that he alleged had been damaged. Upon the 172-acre tract there was a spring, and from this spring water passed into a creek, or branch, which passed under the railroad and onto the 19-acre tract flowing across it and emptying into Clark's Run creek. In the deed executed by appellant to the railroad company there is found this covenant:
 "The water of the old spring in the yard shall not be diverted from its course to the lands of said Fackler situated east of the Cincinnati, Southern Railway right of way." *Page 342 
The main complaint of appellant is that appellee has violated and is violating the covenant quoted, and that he is entitled to an injunction to prevent further violation of the covenant, although appellant may not have suffered, and may not now suffer, any damages by reason of the violation of the covenant.
The water, in passing from the west side of the railroad tract to the east side thereof, flows through an underpass, and when it emerges on the west side it continues its course oil and through the 19 acres belonging to appellant. Appellee placed a dam in the underpass made of railway timbers with a concrete cap. Appellant argues this was a diversion of the water of the spring from its course to his lands. The appellee admits the construction of the dam, but shows that it left a 10-inch hole near the bottom of the dam, and a 10-inch hole near the top of the dam, which holes were sufficient to carry all the water flowing through the underpass. Appellant responds to that answer of appellee, and admits the two holes, but contends that both the holes were kept plugged by the appellee, and that as a result of the building of the dam and the plugging of the holes, the water from the spring, with other waters from a large area on the west of the railroad right of way, is impounded, thus forming a pond or lake containing an area of about 1 1/2 or 2 acres. Appellee admits the plugging of the holes, but shows that there were grooves in the plugs which allowed the flow of water in a sufficient quantity to make a branch through the land of appellant on the east side of the railroad similar to the branch which so flowed through his land prior to the erection of the dam. In answer to this showing appellant substantially admits that the water still flows through the 19-acre tract of land, but he argues that it is not the spring water that so flows but the commingled water flowing from a large area on the west side of the railroad.
Appellee admits that the waters draining a considerable area were commingled, but it argues that the drainage from the same area went down the branch prior to the erection of the dam, and that it is the same nature and kind of water that formerly flowed across the land of appellant. This argument is met by appellant with the statement that it is true that the water from the same area flows into the pond or lake, and that some of it flows *Page 343 
out of the pond or lake across his land, but he says that prior to the construction of the dam the flush water after the branch was flooded by sudden rains passed rapidly over his land and disappeared, and thereafter the refreshing, cool, and pure spring water flowed in its natural channel. The arguments advanced, and the replies thereto, illustrate fully the controversy between the parties. In its last analysis the appellant contends that it is a violation of the covenant in the deed to allow the water from the spring to stand in a pool with other water in the drainage area, and allow that which flows over his land to come out of the pool. His other contention is that, although there may be a sufficient quantity of water flowing over his land, yet the control of the dam is exclusively with the appellee, and such control operates as a continuous menace to his right.
After the jury returned a verdict against him to the effect that he had sustained no damages he appeared in court and moved for a mandatory injunction pursuant to the prayer of his petition, which would compel the removal of the dam placed across the branch by appellee. The petitions were filed in equity, and such relief was sought in them. The chancellor overruled his motion for a mandatory injunction, and he has brought his case here asking for the reversal of the judgment refusing the injunction.
It is the general rule that a riparian proprietor is entitled to have the water of a stream to flow to his land in its natural course undiminished in quantity and unimpaired in quality. It is a right inseparably annexed to the soil, and passes with the land, not as an easement or appurtenance, but as a part and parcel of the land. 27 R. C. L. 1091. We deem it unnecessary to go into the law governing the right of riparian owners or the general rules governing the water in streams. The very basis of the contention of appellant is that the contract which he made with appellee has been violated. It is admitted that appellant has not made such use of his 19-acre tract of land as necessitated the use of the water which flows across his land in the branch formed by the water from the pool. It must be admitted that he has not been damaged by reason of the construction of the dam. But it is argued, by his counsel, that where restrictive covenants as to the use of land are entered into, the question *Page 344 
of damage is wholly immaterial. The rule is thus stated in 32 C. J. p. 208:
 "It is a well defined exception to a general rule heretofore considered, that where one who has entered into a restrictive covenant as to the use of land commits a distinct breach thereof, he may be enjoined irrespective of the amount of damage caused by his breach, and even if there appears to be no particular damage."
It is settled in this jurisdiction that a railway company may dam a stream and use the water therefrom for railway purposes, if in so doing it does no material damage to the lower riparian owner, who himself makes some beneficial use of the water in the stream. Anderson v. Cincinnati Southern Railway, 86 Ky. 44,5 S.W. 49, 9 Ky. Law Rep. 303, 9 Am. St. Rep. 263; Kraver v. Smith, 164 Ky. 674, 177 S.W. 286.
In the absence of the covenant in the deed appellee had the right to detain and use the water by means of a dam for its purposes as long as it did not make such an unreasonable use as would leave the lower riparian owner without ample water for all the purposes for which he needed to use it.
Assuming that appellant might be entitled to an injunction, although he has not been damaged, it remains to be determined whether appellee has been guilty of a violation of the covenant in the deed. What was the object sought to be accomplished by the covenant in the deed? The branch which flowed through appellant's land at the time the deed was executed was not water which came exclusively from the spring. There were other springs and branches forming to make the branch which flowed through appellant's land. The pool is made up of water which would have passed over the appellant's land if it had not been impeded by the dam. The provision in the deed was to prevent appellee's obstructing or diminishing the flow of the water. Appellee has not prevented the flow of the water across the land of appellant, and there is a lack of definite proof that the flow has even been diminished. We are not convinced that the holding of the water in the pool results in such pollution of the water as entitles appellant to an injunction such as he seeks. It is not disputed that appellee needs the water in the business in which it is engaged, and it appears *Page 345 
that it would be considerable damage to appellee if it should be compelled to remove the dam and thereby be deprived of the water. Appellant is not damaged, according to the verdict of the jury and the judgment of the court below, by anything which has been done by appellee in reference to the construction and maintenance of this dam. The proof does not satisfy us that appellee has mixed and contaminated the water. We fail to find sufficient evidence to show that appellee has violated the covenant in the deed.
It is argued that appellee has control of the dam, and that it might completely obstruct the flow of the water, but the mere fact that it might do so, without any proof that it intends to do so, does not justify the granting of injunctive relief to appellant. He might as well have sought an injunction to prevent the erection of a dam at any time in the future when there was no indication that a dam was to be constructed. The power usually exists in a party to a contract to violate its terms, but that does not entitle the other party to an injunction against him when he has given no indication that he means to violate the terms of the contract. As to the other alleged wrongs complained of by appellant, he would not be entitled to an injunction unless he could bring himself within the provisions of the Code entitling him to relief. He set out in his pleadings eight wrongs, about which he complained and for which he sought damages. But the jury found that he was not damaged, and certainly where there was no contractual relation between the parties he is not entitled to an injunction when there is no proof that he has been or will be damaged.
Judgment affirmed.