JOHNSON v. KRAFT-PHENIX CHEESE CORPORATION.—94 S. W. (2d) 54.

Middle Section. November 2, 1935.

Petition for Certiorari denied by Supreme Court, May 16, 1936.

A. O. Denning, of Gallatin, and W. A. Guild, of Nashville, for appellant, Paul Johnson.

J. T. Baskerville and J. W. Murrey, both of Gallatin, and D. F. Fagerburg, of Chicago, Ill., for appellee, Cheese Corporation.

CROWNOVER, J.   This is a suit by Johnson to enjoin the Kraft-Phenix Cheese Corporation from discharging into a sewer, constructed by the city of Gallatin, dirty water, whey, and other refuse matter from its cheese plant in said city, which sewer empties into Town creek about 100 yards above complainant Johnson's farm.   Town creek flows through his farm, and he alleges that the sewage contaminates the water so that cattle and livestock will not drink it, and the whey and refuse matter decay and give off disagreeable odors, which are very offensive to complainant and his family, and render his property less valuable, and he asks for damages.

Defendant answered that its whey and refuse matter had been discharged into a sewer pipe laid by the municipality of Gallatin, which sewer was emptied into Town creek, which creek is now and has been used by the town of Gallatin as a natural sewer and drain of that town for more than a hundred years.

The cheese company denied that large quantities of whey and deleterious matter are discharged into the sewer, but insists that it now stores its whey in large storage tanks, and gives the same to farmers for hog feed, but admits that it discharges large quantities of water and a small amount of waste matter into the sewer, but denies that it is obnoxious and deleterious.

It alleges that the sewage from the courthouse, schools, hotels, public buildings, and the town of Gallatin is now, and has been for many years, discharged into Duke's branch, which empties into Town creek just above complainant's farm, and gives off offensive and disagreeable odors and pollutes the water, and that the town of Gallatin has a prescriptive right to use said creeks.

The complainant amended his bill so as to allege that defendant has committed a nuisance, and to state that his suit is based on sections 11169 and 11353 of the Code of 1932.

Complainant admits that before the building of the cheese plant the water in the creek was impure, due to the fact that the city sewers discharged into both creeks, but he insists that there was no

odor arising from the water and the cattle drank it, and there were only a few mosquitoes.

Defendant contends: (1) That it discharges its sewage into a municipal sewer, belonging to the city of Gallatin, therefore it is not liable to complainant; the city alone is liable, if any one is liable. (2) That the condition of the creek was caused by the city sewage and not by the whey discharged into the creek by the cheese plant. (3) Since July, 1929, only small quantities of whey have been discharged into said creek from said sewer; and that since about the first of September, 1932, no whey has been discharged into the sewer, and therefore no injunction should be granted.

The chancellor found and decree as follows:

"The complainant owns and has owned continuously the land described in the original bill since September, 1920.

"The defendant owns a factory in the city of Gallatin, Tennessee, where it has manufactured cheese continuously since 1928. The slops and waste from said factory, consisting principally of whey, are poured into a public sewer built by the city, which empties into Town Creek a short distance beyond the city limits. Duke's Branch empties into Town Creek below the outlet of said sewer, which serves as the conduit for the waste from said cheese factory.

"The City of Gallatin has a population of about 3,000. The city has built and keeps in operation a system of sewers which serves its population, hotels, court house, jail, public schools and factories. The system empties into Duke's Branch near its confluence with Town Creek, above where said Town Creek enters complainant's land.

"Gallatin has been the county seat of Sumner County for more than 130 years. During all that time Town Creek has served the population as an open sewer and the waste and offal of the town reaches Town Creek before said creek enters complainant's said land.

"For more than twenty years the waters of Town Creek have been so contaminated as to render them unfit for use by man or beast. More than twenty years ago the origin of many cases of typhoid fever was attributed to bathing in said creek. During 1930 and 1931 there was an almost unbroken drought, during which said Town Creek became a series of stagnant pools connected by long rills. These pools became so putrid that the odor was offensive to the entire community. The water turned black or very dark, and became the breeding place of mosquitoes of the culex variety, not disease bearing, but ferocious and noisy. This condition was not caused by the effluent from defendant's said cheese factory. It is a matter of common knowledge and is proven by the record that stagnant pools of water are prolific breeding places for mosquitoes.

"None of the waste from the cheese factory was poured directly into Town Creek. All said waste went directly into an artificial sewer built by the city of Gallatin, to serve its population, including

defendant. If the said sewer was and is insufficient for such service, the user of such public sewer cannot be held responsible.

"It further appears to the satisfaction of the court from the proof that all the allegations and charges made by the complainant in his original and amended bills are fully met and denied by the defendant's answer, and that said allegations and charges in complainant's bills are not sustained by the proof.

"It is therefore ordered and decreed by the court that complainant's said bills, original and amended, be and the same are dismissed. . . ."

Complainant filed a motion for a rehearing which was overruled by the chancellor, to which complainant excepted, and appealed to this court, and has assigned errors as follows:

(1) The chancellor erred in holding that the city of Gallatin alone was liable for damages, if any.

(2) The chancellor erred in holding that for more than twenty years the waters of Town creek have been so contaminated as to render them unfit for use by man or beast.

(3) The chancellor erred in holding that the drought of 1930 and 1931 caused the condition complained of.

(4) The chancellor erred in not finding and holding that the cheese plant sewage, either alone or in combination with other sewage and drainage of the town of Gallatin, constituted a nuisance.

(5) The chancellor erred in not granting said injunction and awarding complainant damages.

Gallatin is a town of 3,000 inhabitants. A shallow creek called "Town Creek," has its origin somewhere north of Gallatin and flows south through the western side of the town and through complainant Johnson's farm, which is immediately south of the town. Along the eastern and southern boundaries of the town another shallow branch or creek flows, which is called "Duke's Branch." This branch flows into Town creek at the northwest corner of Johnson's farm. The drainage of the town flows into these two creeks.

At some time between 1901 and 1903 Sumner county constructed a sewer from the county jail, in the town of Gallatin, to a point at about the southeast corner of the town, at the corner of the cemetery. Subsequently the courthouse, high school, and hotels laid sewerage connections to this sewer. In the course of time all the business buildings on the square, the schools, college, and several private residences were connected by lines of sewers to this original sewer. Later a sewer was laid from other parts of the town to Town creek. Only a few private residences connected with the sewers. By the year 1911 the town had a good-sized sewerage system, draining into these two creeks. On the western side of town a creamery plant and an ice plant were built; their sewage being drained into Town creek. There has been very little change in the volume of sewage of Gallatin since 1928, with the exception of the sewage of the cheese plant established in 1928.

In 1920 Paul Johnson purchased a farm of 294 acres, immediately south of the town. It was a fine stock farm, for which he paid $60,000. Town creek enters the farm at about the northwest corner and flows due south the length of the farm. The north boundary of the farm is a short distance south of Duke's branch, and the junction of the two is in the northwestern corner of the farm.

In July, 1928, the Kraft-Phenix Cheese Corporation built a plant in Gallatin for the manufacture of cheese. The Chamber of Commerce had negotiated with the cheese company and secured this plant for the benefit of Sumner county. This is an agricultural, stock-raising, and dairy section, and the cheese plant furnished a market for whole milk for the farmers, which was an advantage to Sumner county and the town of Gallatin. A number of citizens of Gallatin contributed sufficient money to buy the lot on which the plant should be built and lay a side-track, which money was repaid by the cheese company after the plant was in operation. The plant was located in the northwest part of town.

It was stipulated by the cheese company that the town of Gallatin should furnish sewerage for the disposal of the waste of the plant. The town accordingly built a connection from the cheese plant to a sewer already laid and used by other plants. This sewage was discharged into Town creek, near the thickly populated part of town. The whey resulting from the manufacture of the cheese was discharged into the sewer and into the creek. The whey, when putrified, gave off a very disagreeable and offensive odor, like that of rotting milk. The residents of that part of the town complained. The town then, in the spring of 1929, laid a new sewer pipe line, 1510 feet long, from the cheese plant to a point on Town creek about 70 feet above the boundary line of Johnson's farm. It was constructed for the benefit of the cheese plant, but later several residences and a tobacco warehouse were connected to same.

After an examination of the record and the authorities, we are of the opinion that the assignments of errors are not well made and should be overruled. According to the undisputed testimony, the town of Gallatin agreed to furnish sewerage for the cheese company, put in one sewer which was not satisfactory to the residents of the town, and then put in a longer sewer which empties into Town creek. Other landowners were permitted by the town to connect with this sewer. There is no controversy about the ownership of that pipe line or sewer. It is a part of the city sewerage system, and it is the duty of the city to take care of the sewerage after it is deposited in its sewerage system.

This proposition was ably discussed by the United States Circuit Court of Appeals in the case of Carmichael v. City of Texarkana, 116 F., 845, 849, 58 L. R. A., 911, in which the court said:

"The injuries which the complainants suffer were not the natural, direct, or probable consequence of these acts. If they had taken

their own sewage to the creek, and poured it into its waters above the premises of the complainants, they would undoubtedly have fallen under the rule, and would have been liable for any injury which the appellants suffered from their acts. On the other hand, if they had made an agreement with an independent contractor for a stipulated annual compensation to remove all their sewage from their premises to a place where, and in a manner in which, it could do no unnecessary injury to any one, and their contractor had carelessly deposited it on the complainants' land, or in the stream above their property, the demurrants would not have been liable for these wrongful acts of their contractor. Their relation to the city and to its negligence is not of a different character. They had no right or authority to construct or operate a sewer system in the city of Texarkana, nor had they any control over the manner of its construction, modification, repair, or operation. All this control was vested by the laws in the municipality. Nevertheless, the statutes gave them the right to have the sewage from their premises removed by means of a sewer system constructed and operated by their city. If that system were lawfully, skillfully, and carefully built and operated, it would entail no injury upon the complainants, or upon any other parties. The law vested the power in, and imposed the duty upon, the city of Texarkana, and upon that city alone, to construct and operate such a system within the bounds of that municipality, and required it to do so in such a manner that no unnecessary injury would be inflicted upon any one. It expressly authorized the demurrants and the other inhabitants of that city to invoke, by proper petitions, the power of the municipality to build and operate such a system, gave them the right to the use of it for the removal of their sewage, and imposed upon them taxes and assessments to pay for its construction and operation. It was such a system of sewerage—a system lawfully and carefully constructed—that they called upon their city to build and operate, and for which they have become liable to pay taxes and assessments. If the city had constructed and operated such a system as it was its legal duty to build, the complainants would not have been injured, and no one would have been liable for any damages whatever. The demurrants never requested or authorized the city to inflict injury upon the complainants, or to be guilty of negligence or lack of skill in the discharge of its duty. They invoked its power to construct a lawful system in a lawful manner. The city has constructed and is operating one of its main sewers so unskillfully and negligently that it conducts the sewage, which the demurrants have the undoubted right to pour into it, under the statutes and under their implied contract with the city that the latter will lead away this sewage without injury to others, into the brook above the complainants' property, to their serious injury. But the demurrants had no con-

trol over the manner of this construction. They have no right to change the sewer, no direction of its operation, and, since they have no control over its construction, operation, or repair, they cannot be liable jointly with the city for the wrongful acts of which it alone was guilty, and which it alone had the power to do or to refrain from doing. The power of control is the test of liability. If one has no power to command or direct another in the performance of an act charged, he cannot be liable for the manner in which it is done, either alone or jointly with the actor. Brady v. Chicago & G. W. Railway Co. (C. C. A.), 114 F., 100, 107 [57 L. R. A., 712]; Atwood v. Chicago, R. I. & P. Railway Co. (C. C.), 72 F., 447, 454, 455.

■ ''The result that these citizens are not liable for damages resulting from negligence in the construction or operation of this sewer is neither unique nor unprecedented. It rests on a rational principle of law, which is of general, if not of universal, application. The owners of property in a city, who invoke its power to grade a street or to build a sidewalk, and to keep them in repair, are not jointly liable with the municipality for the damages which result to third persons from the negligence of the city in the construction or care of the street or of the sidewalk because they requested its construction, and have constantly used it since it was built. The inhabitants of a municipality, who invoke its power to construct waterworks, or to extend its water mains, and who constantly draw water from them for domestic or manufacturing purposes, are not jointly liable with the city for damages to others which result from its negligence in the construction or operation of its mains. Indeed, the inhabitants of a city, who call upon it to construct and care for a local improvement, which it has the legal power to build and to control, and who use the improvement, when completed, for the purpose and in the way prescribed by the law, are not liable jointly with the city for the damages which resulted to third parties from the negligence of the city in the construction, management, or operation of the betterment.

■ ''The same considerations which exempt the demurrants from liability with the city for its negligence constitute them improper parties to this suit for an injunction. It is not their acts in depositing their sewage in the conduit which the city has provided for them that are the proximate cause of the continuing injury to the complainants. It is the negligence of the city in the construction and control of the main sewer, which it was the duty of the city to so construct and operate that no nuisance would be created. The demurrants have the right to rely upon the discharge of its duty by the city, and to deposit their sewage in the conduit which it was the duty of the city to provide for its removal, in consideration of the taxes and assessments for which they made themselves liable when they invoked its power. They were improperly joined in this suit, not only because they were not jointly liable in damages with

the city, but also because their acts were not the proximate cause of the nuisance and the continuing trespass, and the complainants had no cause of action against them. There was no error in the ruling of the court sustaining their demurrers, and dismissing them from this suit.

"This conclusion has not been reached without a careful consideration of the broad averments in the bill that the demurrants and the city, acting together in concert at the same time, have, by means of the open sewer and its use, created and maintained this nuisance, and that they have not ceased to do so. If these allegations stood alone, they would undoubtedly charge these citizens with liability; but they are accompanied with averments that the demurrants invoked the power of the city to construct the sewer, that the city was guilty of gross negligence in building it, and that the demurrants had used, occupied, and operated it 'by authority of, under, and from the city.' When all these statements are read together with the statutes which vest the right to construct, to change, to repair, and to control this sewer exclusively in the city, there is no escape from the conclusion that the acts and omissions of the city, and not those of the citizens, constituted the proximate cause of the injury to the complainants, and that the inhabitants who requested the construction and operation of the improvement are not liable for those acts and omissions, because they had no power to command or control the city in their performance."

To the same effect are the cases of Kraver v. Smith, 164 Ky., 674, 177 S. W., 286; Athey v. Tennessee Coal, Iron & Railway Co., 191 Ala., 646, 68 So., 154; Hines v. City of Nevada, Iowa, 150 Iowa, 620, 130 N. W., 181, 32 L. R. A. (N. S.), 797; Ferrand v. Hallas Land and Building Company, 2 Q. B. (1893), 135; Lewis v. Alexander, 24 Can. S. C., 551; 5 Thompson on Negligence, sec. 5897.

The case of Kraver v. Smith, supra, is very much in point. It appears that a distilling company, by agreement with the city engineer and other city officials of the town of Henderson, attached its sewer to one of the city's sewers and discharged large quantities of refuse matter into the sewerage system, which greatly inconvenienced and damaged Smith and others, for which they brought suit against both the distilling company and the city of Henderson. The Court of Appeals held that the distilling company was not liable, and that, if the plaintiffs had any suit, it was against the town of Henderson.

We think that these authorities are conclusive. The cheese company committed no wrong in putting its sewage into the city sewerage system. It was then the duty of the city to take care of it and to see that it was septicized before it was deposited in Town creek.

We think the chancellor was correct in holding that Town creek and Duke's branch were both contaminated by the city sewage and unfit for use, and the question whether the cheese company's

refuse matter added to its pollution is immaterial in this instance, for the reason that it is the duty of the city to take care of the situation.

And the question whether the cheese company has ceased to discharge its whey and refuse matter into the sewer is also immaterial under the circumstances of this case.

However, after an examination of the record, we are of the opinion and hold that pouring large quantities of whey into the sewer did add to its pollution, and greatly increased the foul odors and further contaminated the water. This is evident from the result in discharging it into the short sewer in the edge of the city. But we think that under the evidence the cheese company ceased to discharge large quantities of whey into the sewer after the bill in this case was filed. But, as above stated, we think this question is now immaterial.

All the other questions raised by appellant have become immaterial, and it results that all the assignments of errors must be overruled and the decree of the lower court is affirmed. The cost of the cause, including the cost of the appeal, is adjudged against appellant and the surety on his appeal bond.

Faw, P. J., and DeWitt, J., concur.