## Franz v. Jacobs.

(Decided March 21, 1919.)

Appeal from Greenup Circuit Court.

1. Waters and Water Courses—Easements.—An upper proprietor has an easement in the land of his adjoining neighbor below for

the natural flow of surface water and that in natural streams, and the lower proprietor may not interfere with either by the construction of dams or otherwise impeding the flow.

2. Waters and Water Courses—Surface Waters.—The owner of the upper estate may not collect or concentrate on his land surface water and then empty it in volume upon his adjoining neighbor below, nor can he by artificial means cause increased amounts of water to flow into natural streams so as to damage the lower proprietor.

3. Waters and Water Courses—Damages.—To enable the lower proprietor to maintain a suit for a violation of his rights by the upper proprietor he must show that the damage and injury of which he complains is the proximate result of the alleged wrongful act.

4. Appeal and Error—Finding of Chancellor.—Where the evidence is conflicting and the mind is left in doubt as to the truth of the matter, this court will give weight to the finding of the chancellor and adopt it.

S. S. WILLIS and R. D. DAVIS for appellant.

ALLEN D. COLE and W. T. COLE for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

Appellant, plaintiff below, and appellee, defendant below, own adjoining farms in Greenup county, both of which border on the Ohio river, which at that point runs east and west. Defendant's farm lies above that of plaintiff, and some distance from the river bank on defendant's farm, is a natural sag, slough or depression running entirely across the farm and extending upon the next adjoining one on the east. The lower end or foot of the sag extends to or perhaps upon a small portion of plaintiff's farm. Between the bank of the river and the slough or sag is a slight elevation called by the witnesses a ridge. There is a narrow place in the ridge a short distance from the line between the farms of plaintiff and defendant, and through this narrow place there was an old ditch leading from the sag on to the low ground immediately next to the river, and when open would permit the water which collected in the sag to run out and find its way into the river, which could be done only when the river was not high enough to prevent it. According to the testimony the ditch was an artificial one, but when it was dug or by whom, no one seems to be able to tell. In times of high water it would fill with drift and debris and would constantly have to be cleaned out. In the fall of 1913 de-

fendant put an eight-inch sewer pipe from the bank of the river through the ditch and up the sag to the lowest point in it and constructed a dam across the ditch. The purpose of this work was to have the sewer drain off the surface water which would collect in the sag and also the overflow water which would be left in it in times of floods, and the dam constructed across the ditch was to prevent the water from the river running into the sag at ordinary stages of the water. Plaintiff, upon the theory that the stopping of the ditch caused the water in the sag to flow over his land below and wash away and damage it, brought this suit in which he sought a mandatory injunction against defendant, commanding him to remove the dam, and to recover the sum of $500.00 for damages which he alleged had accrued since the dam was constructed.

The answer denied the allegations of the petition and claimed that defendant had the right to stop the ditch by constructing the dam, upon the ground that it was not a natural stream but an artificial one, in the continued opening of which plaintiff had no rights. Appropriate pleadings made the issues, and upon hearing, after proof taken, the court dismissed the petition, and to reverse that judgment plaintiff prosecutes this appeal.

The civil law governing the rights of contiguous owners of land relative to the flowing of surface water as well as that in natural streams has been adopted in this state, and it is, that an upper proprietor has an easement in the land of the lower proprietor for the escape from his land of both surface water and that running in natural streams, which right the lower proprietor may not interfere with or obstruct by any act which would prevent the flowing of either surface water or that carried by natural streams. A corresponding duty is imposed upon the upper proprietor not to collect surface water into a volume and empty it upon the lower proprietor, nor can he by such means augment the flow of a natural stream so as to damage his neighbor below. These rules with their application to the various facts presented are adopted in the cases of Moody v. Fremd, 177 Ky., 5; Pickerill v. City of Louisville, 125 Ky. 213; Kemper v. City of Louisville, 14 Bush, 87; Hahn v. Thornberry, 7 Bush 413; Grinstead v. Sanders, 22 Ky. Law Rep., 51; Robertson v. Daviess Gravel Road Company, 116 Ky. 913, and other cases which might be cited.

Plaintiff claims that under the law as announced in the cases referred to he has the right to maintain this action, since he contends that by the damming of the ditch defendant permitted the surface water to collect in the sag without an outlet and forced it to run over plaintiff's land, and that in doing so he stopped what plaintiff insists is a natural stream, thereby causing the water to flow upon his land in increased quantities or in such a way as to produce the damages complained of. If the facts assumed in plaintiff's petition were established there could be no doubt about his right to relief. As we read the record there is no proof to show that any of the water producing the damage was collected surface water. On the contrary, it is conclusively shown that the sewer mentioned is amply sufficient to and does drain from the slough or sag all surface water, at least enough to keep it from getting out of the banks of the sag and flowing over plaintiff's land. The proof is that plaintiff's land at the place of which he complains is more than one foot higher than the point where the dam is constructed, and the flood water would not run over *that place* when it was to the top of the dam. So that it is a difficult matter to see how the dam could cause the water to flow over a place which was higher than the dam. Moreover, a number of witnesses—greater, numerically, than those testifying for plaintiff—who have long been familiar with that territory and surrounding conditions testified that the construction of the dam did not cause an increased amount of water to flow over plaintiff's land. On the other hand they testified—which testimony seems to accord with natural principles—that the construction of the dam prevents the water in ordinary stages (and except in times of high floods) from getting into the sag and thereby serves to protect at least that part of plaintiff's land covered by the depression. To this extent it benefits him. When the waters of the river are at sufficient flood stage to go over the dam and thereby fill the sag, it is also at that time over a large portion of plaintiff's farm, and then no water could run through the ditch so as to lower the water in the sag to any extent because the river into which it would have to empty would be full. When the water in the river would recede so as to get below the dam and permit the ditch if open to drain the sag, that portion of plaintiff's farm about which he complains, being higher, would be free from water. We therefore conclude

that defendant's witnesses had scientific grounds upon which they could base their testimony, as well as upon their actual observations.

It is true plaintiff shows that a small portion of his land in floods occurring in 1913 and since then has to some extent washed, but there is plenty of testimony to show that this is a usual and ordinary occurrence with land contiguous to a stream like the Ohio river. It also appears from the testimony that some floods will wash the overflowed land, while others will deposit sediment thereon, dependent upon the duration of the rise in the river. So we conclude that the essential fact entitling plaintiff to the relief he sought, i. e., damage as a proximate result of the acts complained of, having been put in issue and determined by the trial court against him upon sufficient evidence, there is no course left to us but to affirm the judgment. In cases like this the rule is that where the evidence is conflicting and the mind is left in doubt as to the truth of the matter, some weight will be given to the finding of the chancellor. Campbell v. Trosper, 108 Ky. 602, and Moody v. Fremd, *supra.*

Another question presented and discussed by defendant's counsel is that the rules of law governing the rights of adjoining properties with reference to the flowing of both surface water and that in natural streams have no application to the damming or destruction of an artificial ditch. This contention is attempted to be met by plaintiff's counsel with the argument that where the artificial ditch has existed for such a length of time as to give the complaining party a prescriptive right in its continued maintenance, the same law would apply as though the ditch were a natural stream.

However interesting it might be to take up and discuss these questions, we are not disposed to do so in view of the fact that the judgment will have to be affirmed upon the chancellor's finding of fact.

Wherefore, the judgment is affirmed.