# DECISIONS

## OF THE

# Court of Appeals of Kentucky

## Louisville & Nashville Railroad Company v. Stephens. et al.

(Decided February 10, 1920.)

### Appeal from Daviess Circuit Court.

1. Trial—Giving Instructions in Civil Cases.—In a civil cause, it is not the duty of the court to give instructions, which are not requested by the parties, though it may do so, and if it undertakes to give an instruction upon an issue in the case, upon its own motion. it must give a correct one. If there are several issues in a case, and the court, upon its motion, undertakes to instruct upon one of the issues, it is not a ground of complaint, that it does not instruct upon all the issues.

2. Trial—Giving Instructions in Civil Cases.—In the trial of a civil cause, if a party desires an instruction upon a certain issue, he must offer an instruction upon that issue, and if he elects not to do so. it is considered that he has elected to take his chances with the jury, without an instruction upon the issue, and can not, thereafter, be heard to complain of a failure of the court to instruct upon the issue.

3. Drains—Construction of Ditch—Compensation to Intervening Proprietor.—Sub-section 30, of section 2380, Ky. Stats., does not authorize a landowner, whose lands have been assessed for the construction of a public ditch, to construct a lateral ditch from his lands to the ditch over the lands of an intervening proprietor, to drain his lands of water, which does not naturally fall or flow thereon, nor in any event, without compensation to the intervening proprietor, if any damages are suffered, by reason of the construction of the lateral ditch.

BENJAMIN D. WARFIELD, W. F. BROWDER and W. P. SANDIDGE for appellant.

LOUIS I. IGLEHEART, BIRKHEAD & WILSON and R. W. SLACK for appellees.

Opinion of the Court by Judge Hurt—Affirming.

The track of the appellant, Louisville & Nashville Railroad Company, as it passes through Daviess county, runs north from Utica station, near the eastern border of a low, flat valley, of a general width of one-half mile and fringed upon either side by hills; and where it passes out of the valley, about two miles to the north of Utica station, the valley turns towards the west, and continues on to Panther creek. The decline in elevation of the surface of the valley, is from the south toward the north, and previous to the construction of the railroad, the natural flow of the waters, surface and otherwise, was from the south toward the north near the western side of the valley, along a bed of a creek, called Big Run or Long Run, which meandered through the valley, and at one point, separated into two prongs, but both bore in a general direction toward the west side of the valley, as the surface of the lands declined from about the railroad track in that direction. Neither of these streams, as it is claimed, came in contact with the lands of appellees, except upon the southwest corner, and when the channel of the creek, which was well defined, was not sufficient to contain the waters, they overflowed upon the lands, in the valley. After the construction of the railroad, the waters upon the eastern side of the railroad track, and from south of Utica, upon that side, flowed through a trestle, about two hundred yards, to the north of Utica, and thence into the creek bed, but, twenty years or more ago, a dam or embankment was placed opposite the trestle on the western side of the track, and this had the effect, in large part, of changing the course of the flow of the waters, into a shallow ditch along the western margin of the railroad right of way, and when this ditch would not contain the waters, they would overflow to the westward, and as appellees claim, did not inundate their lands except in unusually high waters, and then they flowed away from their lands very quickly. It does not distinctly appear, from the evidence, whether a ditch was attempted to be dug, along the western margin of the track, from the trestle, to the northward, or whether the ditch, as it is called, was the result of removing the earth, to make the grade of the railroad. Anyhow, the ditch, so called, was of variable depths, from nearly even with the surface of the ground to several feet in depth. In the

bend of the valley and where the railroad track left it, the appellees, each, owned a body of land, through which the railroad passed. I. T. Stevens, owned a tract of nineteen acres, and Minnie B. Stevens, a tract of twenty-three acres, which were contiguous, the lands of the former lying against the hill to the northward and the lands of the latter adjoining on the south. Commencing upon or east of the railroad track, a public ditch had been constructed, which led about midway, through the lands of appellees toward the west, and through the valley to Panther creek. The lands in the valley to the southwest of those of the appellees and west of the railroad track had been assessed for the construction of the public ditch, which is called Ford's ditch. Certain lateral ditches were constructed through or between certain of these lands, which connected with the Ford ditch to the westward of the lands of the appellees. After the dam or embankment had been erected at the trestle, north of Utica, and the waters, which flowed through the trestle, diverted to the ditch along the western margin of the right of way of the railroad, the persons, who owned the channel of the old creek, in great part, filled it up and proceeded to cultivate the lands in it. In 1911, seven of the owners of the lands, between the trestle and the lands of appellees, claiming, that the appellant, by the erection of the dam at the trestle, had diverted the waters, which came through the trestle from their natural course, into the ditch along the margin of the right of way, and had negligently allowed the ditch or depression, to become filled with debris, and had thereby, caused the waters to overflow their lands to their injury, brought actions at law, against appellant, seeking damages. The actions were settled by agreements between the landowners and appellant, by which certain sums in damages were paid to the owners of the lands, and, as a further condition, the appellant agreed to construct and maintain a ditch on the western margin of its right of way from the trestle northward to the Ford ditch, and on the eastern margin of its right of way from the trestle northward to within about eighty-five feet of the Ford ditch, and to connect the ditch, on the eastern side, with the one on the western side, at that point by a culvert under the track of the railroad. The contract contained specifications for the ditches to be constructed, which show, that they were very much deeper and wider,

than the ditches, or depression in the ground, existing theretofore. These ditches were constructed by appellant, in 1912 and 1913. The owner of the lands, along the track of appellant, which adjoined the lands of appellees to the south, was a party to the contract, with appellant, and his lands were, also, of those, which had been assessed for the construction of the Ford ditch. One or more owners of the lands bordering on the ditch, constructed by appellant, upon the western side of its track, and south of the lands of appellee, constructed small lateral ditches upon their lands, connecting same with that ditch. The appellant, in constructing the latter ditch threw the earth from it, upon the western bank of the ditch, and thus made an embankment from the trestle, until the lands of appellees were reached, from which point, to the Ford ditch, no embankment was made, because, as was claimed, appellees would not consent to having the excavated earth thrown upon their lands.

In the latter part of the year, 1915, the appellees, who are husband and wife, as joint plaintiffs, instituted two actions against appellant, one for damages for injuries to the lands of I. T. Stevens, and the crops growing thereon during the year, 1915, and for the value of the use of a certain part of the land of which they were deprived of the use, and for injuries to the tiling upon the lands, and the other for damages for similar injuries to the lands of Minnie B. Stevens, and the crops growing thereon, in the year, 1915, and the tiling thereon. In each of the petitions, it was substantially alleged, that the appellant had unlawfully and negligently constructed the ditches, and thereby diverted the waters from the eastern side of the railroad track and south of the trestle, from their natural course and caused them to overflow upon the lands of appellees, and to remain thereon, in greater quantities and for longer periods of time, than they would have done otherwise, resulting in the destruction of the crops growing thereon, during the year, 1915, and rendered the tiling thereon useless from filling it with earth, and prevented the use of certain portions of the lands, altogether, during that year, and injured the lands permanently. The actions remaining untried until the year, 1916, had passed, amended petitions in each action were filed, seeking damages for similar alleged injuries, suffered from the same causes during the year, 1916. It was alleged, in the petitions, that the con-

struction of the ditches was permanent and intended to be so, on account of the contracts between the landowners and appellant, to the effect, that the latter would construct and maintain the ditches, and there was a permanent injury, or a temporary one, one or the other, but, that they did not know which and followed with prayers for a certain recovery, if it should be determined that the injury was permanent, and a different recovery, if it should be determined, that the injury was only temporary. The appellant, by its answers, traversed all the averments of the petitions and denying, that the construction of the ditches, so far as it had done so, constituted a permanent injury, or that its contract with the landowners required it to permanently maintain the ditches, but, alleged, that the contract only required it to clean out and enlarge the ditches. The appellees, before the trial, by amendments to their petitions, averred, that they were mistaken when they alleged, that the causes of the injuries were permanent, and withdrew the allegations, that their lands had suffered a permanent injury, and instead averred, that the causes of the injuries, were temporary, only, and that they sought to recover such damages only, as arise from temporary causes of injury. The appellant, then, by replies, withdrew its denial, that the alleged cause of injury was a permanent one, and instead, denied that the cause of the injuries, as alleged, was temporary or not permanent. A trial resulted in a joint verdict for the appellees and judgment of the court, accordingly.

A reversal of the judgment is sought upon three grounds:

(1) The court erred in instructions to the jury.

(2) The court erred in refusing to instruct the jury, as requested by appellant.

(3) It was error to receive, over the objections of appellant, a joint verdict in favor of appellees, and to render a judgment thereon, instead of requiring a separate verdict in each action, and rendering a separate judgment in each action.

(a) The error, in instructing the jury, complained of, was the failure of the court to submit to the jury, the issue, as to whether the causes of the injuries complained of, were permanent or temporary, and if permanent to advise the jury, as to the measure of damages, to which the appellees were entitled in the event of a finding for

them. It is insisted, that the court, instead, peremptorily instructed the jury, that the alleged injuries were only temporary, when the issue had been made by the pleadings, and the evidence upon the issue, was contradictory. With the contention, that the instruction with reference to the cause of injury, was peremptory, to the effect, that the cause of injury was temporary, we can not concur. The petitions as finally amended, disclaimed, that the construction of the ditches was a permanent injury, or that the lands were permanently injured, but, the only damage sought was the value of the crops destroyed, in the years, 1915 and 1916; the value of the use of such parts of the lands, as were unfit for use, altogether, during those years, on account of the alleged nuisance, and the costs of repairing the tiling in the lands. Two issues were made in the pleadings, one issue was, whether the construction of the ditches, as done by appellant, diverted the waters from their natural course and was the proximate cause of the damages claimed and for which a recovery was sought. The other issue was, whether the cause of the alleged injuries was temporary or permanent. Upon the first issue, the evidence was contradictory, and was submitted to the jury under an instruction of which no criticism is made. It submitted to the jury, for its decision, as to whether the facts did or did not exist, which must be found to exist, before a verdict could be found for the appellees, whether the cause of the injuries was permanent or temporary. The court, then of its own motion, gave a second instruction, which, in substance, correctly defined the measure of damages, which a complaining party is entitled to recover for the injuries complained of, where the cause or causes of the injury are temporary or where the damages arise solely from the negligent construction of a permanent cause of injury. This instruction was one proper to be given, in the instant case, and the court was correct in the instruction, as far as it went, upon its own motion. The issue as to the permanent or temporary character of the alleged nuisance was not submitted to the jury. The appellant did not offer an instruction, which would have submitted the issue, as to the permanent or temporary character of the alleged nuisance, nor one defining the measure of damages, if the nuisance was found to be permanent. In a civil cause the court is only required to give such instructions as the parties

request, except where a defective instruction is requested upon an issue, and is refused, it becomes the duty of the court to give in its place a correct one. Where there are several issues in a civil cause and the court upon its own motion gives instructions upon one or more issues, it is not cause of complaint upon the part of a party, that it does not instruct as to all the issues. If a party desires the jury to be instructed upon an issue, concerning which the court does not undertake to instruct upon its own motion, or at the request of the other party, it is the duty of such party to offer an instruction upon such issue, and if he does not do so, it is considered, that he is willing to take his chances with the jury, without any instruction upon such issue, and cannot thereafter be heard to complain. Of course, if the court undertakes, to instruct upon an issue, it must do so correctly. C. N. O. & T. P. Ry. Co. v. Curd, 22 R. 1222; Nicola Bros. v. Hurst, 28 R. 87; L. & N. R. R. Co. v. Harrod, 115 Ky. 877; L. H. & St. L. R. Co. v. Roberts, 144 Ky. 820; Chas. Taylor, Sons & Co. v. Hunt, 163 Ky. 120; Branham's Admr. v. Buckley, 158 Ky. 848; Wood v. Bigg, 152 Ky. 242; C. & O. Ry. Co. v. Dwyer's Admr., 157 Ky. 590. Having arrived at the above conclusion it is not deemed necessary to determine, whether the cause of the alleged injuries, as shown by the evidence, and that offered and rejected, conduced to prove, that it was a permanent injury, for which the injured parties could make a single recovery, only.

(b) The appellant offered an instruction, in substance, to the effect, that the lands in the valley, to the southward of appellees' lands, having been assessed for the construction of the Ford ditch, their present owners have the right to drain into it, any water, which naturally falls upon their lands or naturally flows thereon, and the further right to contract with the appellant to construct a ditch upon its right of way, for the purpose of conducting into the Ford ditch any such waters, and that the jury should not find for appellees on account of any damage to their crops or tiling, which was caused, by water which passed through the ditch constructed by it, on its right of way, and which naturally fell or flowed on to the lands of the parties, whose lands had been assessed for the construction of the Ford ditch. This instruction was refused. The ground upon which it is insisted that it should have been given, is the provision of

subsection 30, section 2380, Kentucky Statutes, which in terms authorizes one, whose lands have been assessed for the construction of a public ditch to use such ditch for an outlet for lateral drains from his lands, and if the lands of others separate his lands from the ditch, and he is unable to agree with the owners of the intervening lands, upon the terms and conditions, upon which he may enter and construct a lateral ditch across their lands, he may file an ancillary petition in the proceeding to have the drainage district established and the ditch constructed and maintained, and have the lands of the intervening owner or owners, condemned, as the right of way for a railroad is condemned, and when the lateral ditch is constructed, it will become a part of the system of the drainage district and under the supervision of the drainage commissioners. We are of the opinion, that the court did not err, in refusing the instruction. The evidence fails to show, that the appellant constructed the ditch, by contract with the landowners, alongside of whose lands it runs, for the purpose of draining their lands of any water, which naturally falls or flows thereon, or that the landowners contracted with appellant for that purpose. The ditch was constructed by appellant, to prevent the waters, which it had diverted from their natural course and caused to overflow the lands, alongside it, from continuing to overflow such lands and to escape the consequences of having done so. The landowners would have no right to drain into the public ditch, to the injury of appellees, the waters, which did not naturally fall or flow upon their lands, but came thereon from the wrong or negligence of appellant. The ditch constructed by appellant, is not a public ditch, and no lands were assessed for its construction, and it is not shown to be within any district or under the supervision of the drainage commissioners. Hence, the landowners alongside it, are without a statutory right to connect lateral ditches with it, or to drain any waters, into it, except such as naturally flowed into it from their lands, and if injury resulted to any one, by reason of the construction of the ditch, the maker of it, would be liable. It will be observed, that while the statute attempts to bestow upon the landowner, whose lands have been assessed, to construct a public ditch the right to drain his lands, into it, by a lateral ditch, through the lands of another, and the right to have the lands of the other condemned for that pur-

pose, he cannot do so, without the consent of the other, until the other has an opportunity to be heard in court, as to whether or not there is a necessity for such a condemnation, and the terms and conditions upon which it may be done, and the damages, which the other will suffer, if any, from the construction of the lateral ditch have been fixed and paid to him. A railroad corporation has a right to condemn a right of way, but it must pay the damages. Otherwise, it would be the taking of the property of one for the benefit of another or the public without compensation. If a landowner is not permitted to construct a lateral ditch across the lands of another, without compensating him, for the damages wrought, if any, he could not be absolved from damages by constructing the lateral ditch immediately alongside the lands of the other, by contract with the party over whose lands the ditch is actually constructed, if the construction resulted in injury.

(c) In the two actions, the appellees, husband and wife, joined as plaintiffs in each action. No objection was made to this. One action was for alleged injuries to the crops and tiling upon the lands of the husband, and the other action was for injuries to the crops and tiling upon the lands of the wife. In the first named action, they asserted a joint ownership of the lands, and in the other action, a joint ownership of the crops and tiling was asserted, and a joint possession, either of which allegations was not controverted. The actions were tried together as though one action, and as though all the injuries, complained of, were done to property, jointly owned by husband and wife. The title of neither plaintiff to the property, alleged to be injured, was questioned. The jury returned a verdict for all the damages alleged to have been done to the property, as though jointly suffered by the plaintiffs, and the court rendered a judgment for the appellees, jointly, for the amount of the verdict. The action of the jury and court, in this regard, can not be prejudicial to appellant, as the trial and judgment constitute a complete bar to the maintenance of another action, for the causes asserted, in the actions, by either of the plaintiffs, as they were joint plaintiffs in each action.

The judgment is therefore affirmed.