## Board v. Schneider et ux.

Nov. 2, 1945.

Henry D. Hopson and Woodward, Dawson, Hobson & Fulton for appellant.

Charles Leibson and Al Marret for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

This is one of those cases where a little amity would have avoided litigation, and the spending of a little money to remedy the situation would have saved the greater cost of the lawsuit. It is between next-door neighbors over the disposition of surface water on their respective lots.

Robert V. Board sued Sidney Schneider and his wife, owners of their residence west of and adjacent to his residence on Cherokee Road, in Louisville, and Mrs. Susan Owen, owner of two lots south of and adjoining both the Board and Schneider lots in the rear, the Owen lots fronting on Sherwood Avenue. The plaintiff sought a mandatory injunction to require the defendants to remove certain structures which he alleged caused the surface water to be drained onto his lot in greater volume and force than is natural. He also sought damages. At the conclusion of the plaintiff's evidence the court dismissed the petition against Mrs. Owen because of limitations, and when all the evidence had been heard the court ruled that the plaintiff was not entitled to the relief prayed for and dismissed his petition against Mr. and Mrs. Schneider. Board appeals from this judgment, but does not appeal that in favor of Mrs. Owen.

In the division of the area a number of years ago, an easement or passway for the benefit of the Board and Schneider lots was created over and along the boundary line of the two Owen lots for access from Sherwood Ave-

nue. Apartment houses fronting on that Avenue were erected on those lots, with the passway between them. The elevation of Sherwood Avenue at this point is 10 feet higher than it is at the rear of the Board and Schneider lots where the four join (at the end of the passway), a distance of 85 feet. On the same line that point is 11½ feet higher than at the curb of Cherokee Road, a distance of 100 feet north of it. So it is apparent that with that great descent the natural course of the surface water is from the Owen property onto the properties of both Board and the Schneiders. For several years there was a 3-foot walkway between the apartment houses, which was widened 10 or 12 years ago to a 9-foot driveway. This forms a smooth channel for the surface water, which has always flowed with considerable force. At the foot of this driveway is a gate and three or four steps. The division line between the Board and the Schneider property is about the center of the steps. From there concrete walks run diagonally to the respective rear entrances of the Schneider and Board houses—the entire pavement forming the letter "Y." (But upside down as we have described the situation.) Taking the elevations at their back doors, Board's lot is about five feet higher than the Schneiders'. So the natural course of the surface water from both the Owen and the Board lots is to and upon the Schneider lot. The general slope is northwestwardly (regarding the division line as being due north and south for easier understanding), that is, diagonally from the steps across Schneider's lot, which is the direction of the walk to his back door. It appears that for a number of years the water from the Owen property, and some from the rear of Board's lot, flowed down this walk or over the unpaved surface into a catch basin at the rear entrance of the Schneider residence, through which it was carried into the sewers.

About two years before the suit was filed, the Schneiders constructed a concrete block five inches high, eighteen inches wide, and four feet long straight across their walk near the boundary line. This is the obstruction that the plaintiff charges diverts the natural flow of the water, to his injury. His evidence goes to prove the diversion of the greater part of the water coming down from the Owen property and that the block causes it to run over against his house and undermine it; and also to accumulate in his basement. Some of this water runs be-

tween the houses and reaches the front of Board's residence, where it goes into a sunken driveway, then into his garage under his residence; but this, as we understand, is carried off by a drain in the driveway at or near the door.

The defendants' evidence is that before the construction of this concrete block Board had placed by the side of his house some of the debris produced by the widening of his garage driveway from Cherokee Road, and thereby choked up the channel in which the water ran down to the street. He had put some of the debris on his back yard and had terraced it with dirt. The defendants also showed that a little mound of packed cinders and dirt had been put across Board's walk near the steps from the Owen property. All of these things, it is claimed, cast a greater volume of water on the Schneiders than would be naturally done or that had previously flowed upon it. The drain at the foot of their walk was unable to carry the additional water away and this had caused a part of their basement to be flooded. They had had the catch basin lowered and a coping put around the areaways of the house, but that did not help the situation. Therefore, the Schneiders had put in the block in order to protect themselves against the deflected water and the increased volume caused by Board's acts. They have had no trouble since then. An engineer testified that as the sod or ground surface of the Schneider lot was only three-fourths of an inch above the paving of the walk, when the water stopped by the block had risen that little height it ran around the end of it and flowed on in the same way as if the block were not there, or perhaps had spread the water out over the ground. He was of opinion that in any event, before the water would reach the Schneiders' drain it would flow down between the two houses; but the engineer had never been there when it was raining.

Board undertook to explain that part of the cause of the Schneiders' trouble was the stopping up of their catch basin at the end of their walk. He insisted that the little mound across his walk had been caused by the accumulation of cinders and dirt washed down from the Owen property. His evidence also is that only a few bushels of rich dirt had been placed in his rose beds and no substantial part of the debris referred to had been put on his yard, practically all of it being hauled away.

It is difficult to see how the little debris put in Board's yard or the slight mound across his walk could have changed the course of the water because the natural drainage has always been to Schneiders' lot, no part of which is as high as the Board property. The fact remains that for many years the water had been channeled down the Schneiders' walk without harm. Then it gave them trouble. When they put in the concrete block, their trouble ceased, and Board's began. The evidence shows that the Schnieiders' trouble did not begin until after Board had done something to his lot. The chancellor viewed the premises. In announcing his decision that the plaintiff had not made out a case, he expressed the belief that the little mound on Board's walk had been artificially created, as the cinders and dirt washed down from the Owen property would have piled up farther down on the walk, and was of the opinion that the defendants had merely protected themselves against the result of what the plaintiff had done.

The appellees do not question the elementary law, that a lower estate, such as theirs, is subject to the servitude of receiving the natural flow of surface water from the upper estate and that the owner has no right to create obstructions which will cause the natural flow of water to stop up and overflow the upper ground. Stone v. Ashurst, 285 Ky. 687, 149 S. W. 2d 4; White v. Howe, 293 Ky. 108, 168 S. W. 2d 28, 29. They maintain they did not violate that law of good neighborship, since they had not increased the flow or volume of water on plaintiff's property, the front of which is ten feet lower than the block. City of Ludlow v. Broderick, 181 Ky. 123, 203 S. W. 1082. We think the evidence shows they did. On the other hand, the owner of the upper land has no right to do anything by which the flow of the surface water is diverted from its natural course or channel or to collect it and then throw it upon his neighbor's land. Pickerill v. City of Louisville, 125 Ky. 213, 100 S. W. 873; Stone v. Ashurst, supra. We think there was some evidence to justify the conclusion that the plaintiff had violated this rule of good neighborship.

The appellees rely also upon the rule that a decision of fact by the chancellor should be followed. In this case the decision seems to have been planted upon the law of justification rather than upon the conclusion of fact that the defendants had not given cause for trouble.

We have held that where the natural flow of water from the plaintiff's land was over the land of the defendant, even though the plaintiff erected a structure, such as a ditch or dam, which increased the flow to some extent, the defendant had no right to construct a dam so as to throw the water back upon the plaintiff. In such a case, if the plaintiff seeks equitable relief, he must do equity. And the chancellor, having the parties before him, should settle the entire controversy; and in granting an injunction requiring the defendant to remove his obstruction, he may or should require the plaintiff to correct his own fault and restore his own land to its natural condition as far as it can be reasonably done. Grinstead v. Sanders, Ky., 56 S. W. 665; Bullock v. Harrison, 145 Ky. 358, 140 S. W. 536; Stone v. Ashurst, supra. We think that rule should be applied in this case, and the defendants be required to remove the obstruction complained of when the plaintiff shall have substantially restored his lot to its previous condition.

The judgment is reversed.