**JARVIS et al. v. CORNETT et al.**

Court of Appeals of Kentucky.

April 24, 1953.

L. G. Smith, Harlan, for appellants.

Ray O. Shehan, Daniel B. Smith and Smith & Shehan, Harlan, for appellees.

STEWART, Justice.

Appellants, plaintiffs below, sought to recover in consolidated actions damages to their property alleged to have been caused by the wrongful acts of appellees in diverting water from the latter's land onto that of appellants. At the conclusion of all the evidence the court instructed the jury to find for appellees, and a judgment was entered dismissing the petitions.

The only contention urged by appellants for a reversal is that the trial court erred in directing a verdict for appellees because appellants insist that the evidence introduced by them with the reasonable inferences that might be drawn therefrom justified a verdict in their behalf or at least a submission of the case to the jury.

The lots of the respective parties lie side by side along Main Street or the highway that passes through the town of Wallins Creek in Harlan County, appellees' lots being situated on a higher level compared with those of appellants. Appellees operate a filling station and a general store on one of their lots. A ditch runs adjacent to the highway, passing along the front of all the property involved, and, in order to afford a suitable place for automobiles to cross over to their place of business, appellees laid tile pipe in the ditch to permit the uninterrupted flow of water therein and then filled in over the pipe to the level of their lot and the highway. It was established that the tile had been in place for 15 years prior to the institution of this action.

Appellants attempt to bottom their case upon the theory that appellees have allowed the tile pipe to become stopped up, thus causing the water coming down the ditch to be diverted under the store and thence over onto appellants' property. They assert this overflow of water has resulted in considerable damage to their land and the structures thereon.

Appellant, Randall Jarvis, on cross-examination, testified that appellees had knocked a hole in the above-mentioned tile pipe in order to divert the water under their store and thence onto the lots of appellants; but he then admitted that this hole had been made at a point where the

water coming from it would later re-enter the ditch running along the highway without getting over on the property of appellants. He further stated that appellees had dug a ditch between the lots of appellants and those of appellees to convey excess water coming from beneath the store into the ditch along the highway. However, he maintained that some of the water that flowed from appellees' land still seeped through onto appellants' lots after each rain, in spite of the fact that they had built up the edge of their lot next to appellees' property with two feet of dirt. John M. Howard, who had resided on one of appellants' lots for a period of two years, testified that water did flow across appellants' property, "part off of lots above it and part from off the road," but he said the amount of flow depended upon "how hard it rained." Frank Jarvis, introduced as a witness for appellants, testified that water came from appellees' lots over on appellants only "when it rained hard." The tenor of his testimony on the whole was that any water draining onto appellants' lots did so because appellees' lots were higher.

Viewing the testimony of appellants' witnesses in the best possible light we find that any acts of appellees that tended to increase the flow of water from their lots were also designed to prevent the flow of such water onto the lots of appellants. Furthermore, it appears conclusively from the record that any water which did flow onto appellants' lots did so as a natural consequence of the latter's lots being on a lower level.

 The owner of the upper estate may drain and ditch his land for the purpose of carrying off surface water therefrom into natural channels by building sewers, gutters and culverts thereon, without liability to the owner of the lower estate, even though such methods of ridding his property of surface water accelerate and increase the flow of the same onto the lower estate, so long as he does not tap water from additional watersheds or divert water from natural drains which otherwise would not have flowed onto the lower estate. As a necessary corollary the upper proprietor is not liable for any increase in the volume of water accumulating in a natural drain due to the erection of houses on his land. See Wallace v. Schneider, 310 Ky. 17, 219 S.W.2d 977, wherein this subject is treated exhaustively.

The evidence in the case at bar fails to show that appellees caused an unnatural flow of surface water onto appellants' land. Therefore, the lower court properly directed a verdict in appellees' favor.

The judgment is affirmed.