COMMONWEALTH of Kentucky, DEPARTMENT OF HIGHWAYS, Appellant,

v.

T. F. ROUNDTREE, Appellee.

Court of Appeals of Kentucky.

Nov. 22, 1963.

John B. Breckinridge, Atty. Gen., William A. Lamkin, Jr., Asst. Atty. Gen., Phillip K. Wicker, Somerset (Dept. of Highways), for appellant.

James A. Inman, Whitley City, Joe S. Feather, Williamsburg, for appellee.

PALMORE, Judge.

This action was brought by the Commonwealth to enjoin the appellee, Roundtree, from obstructing the drainage of surface waters onto his property from a catch basin on U. S. Highway 27 in Whitley City. Roundtree counterclaimed for damages and injunctive relief against the continued maintenance of such drainage. The trial court denied relief to the Commonwealth, awarded Roundtree $600 in damages pursuant to a jury verdict, and enjoined the Commonwealth from further maintaining the catch basin. The Commonwealth appeals.

The Roundtree lot fronts on the east side and several feet below the level of the highway, which at that point runs downhill, north to south. Apparently there is a dip or swag in the grade of the road as it passes Roundtree, and during WPA days some 25 years ago a catch basin was constructed in the right-of-way next to the sidewalk on the east side. It emptied into a 15-inch concrete pipe leading under the sidewalk and through a stone retaining wall bordering the adjacent property now owned by Roundtree. Water received by the catch basin would pass through this pipe, spill four or five feet to the surface of the ground, and drain naturally down a hollow or declivity across the Roundtree premises.

Later on, evidently in the early 1940's, U. S. 27 was resurfaced and the catch basin was covered over with pavement. However, the dip in the grade of the highway was shallow enough that surface waters

accumulating there would be contained by the curb formed by the sidewalk and run off down the east edge of the road before reaching a depth sufficient to overflow the sidewalk and enter the Roundtree lot. This was the situation when Roundtree purchased the property in 1949.

In 1961, acting on complaints that the recurrent accumulation of water in the highway following rainfall created a situation hazardous to both vehicular traffic and pedestrians, the highway department cut out the pavement over the catch basin, thus permitting drainage onto Roundtree.

■ It is agreed by all concerned that the upper owner has a natural easement over the lower property for the drainage of surface water flowing in its natural course and manner. The applicable principles in this respect are fully discussed in Wallace v. Schneider, 310 Ky. 17, 219 S.W. 2d 977 (1949). However, there was substantial evidence that some of the waters received and discharged by the controversial catch basin would have been diverted into three or more other natural outlets to the side of the road before it reached Roundtree and would not have drained onto his property but for the slope and bank of the highway surface and the elevation formed by the sidewalk along the east side. Out of an abundance of caution the trial court submitted this factual question to the jury through an instruction (offered by the Commonwealth) under which it was bound to find for the Commonwealth unless some of the water discharged by the catch basin was "in excess of what would normally and naturally flow" over Roundtree's land and came from an "additional source from which it would not otherwise have flowed." The issue was settled by the return of a verdict favoring Roundtree.

■ Since, then, the established fact is that the catch basin tapped sources be-

yond the scope of the natural drainage easement, the burden was on the Commonwealth to prove by what means it had acquired this additional right. Had the proof shown that the catch basin ever had been in use for a consecutive period of 15 years, the additional servitude would have been created by prescription, but there was no such evidence, nor was there a showing of any grant or other muniment of title. Hence the granting of an injunction to Roundtree and denial of one to the Commonwealth were proper.

The foregoing conclusion makes it unnecessary to determine the applicability of City of Harrodsburg v. Cunningham, 299 Ky. 193, 184 S.W.2d 357 (1945), on the question of abandonment, an additional theory on which the judgment is defended. There are, however, at least two salient distinctions. In that case the easement had been established by prescription, and the basis for holding that prescriptive easements may be lost by non-user might not necessarily apply to the right of surface drainage which is recognized by law as arising out of the nature of things. In that case also, the loss by non-user occurred while the dominant estate was in the ownership of an individual rather than the state. Whether the state could lose an easement by non-user is another question, one we need not now decide.

■ The Commonwealth's contention that it was improper for the court in effect to deny it an easement and at the same time award compensation on the reverse condemnation theory overlooks the fact that the recovery represented damages for a temporary user, not a permanent easement. Keck v. Hafley, Ky., 237 S.W.2d 527 (1951), and Kentucky Game and Fish Commission v. Burnette, 290 Ky. 786, 163 S.W.2d 50 (1942), involved permanent takings.

The judgment is affirmed.