Carlton N. KLUTEY et al., Appellants,

v.

COMMONWEALTH of Kentucky, DEPART-
MENT OF HIGHWAYS, Appellee.

Court of Appeals of Kentucky.

Dec. 8, 1967.

As Modified on Denial of Rehearing
June 14, 1968.

John L. Dorsey, Jr., Dorsey & Sullivan, Henderson, for appellants.

Robert Matthews, Atty. Gen., H. C. Smith, Asst. Atty. Gen., Frankfort, M. T. Quinton, Jr., Madisonville, for appellee.

CLAY, Commissioner.

This action was brought by the Commonwealth to enjoin appellants from maintaining embankments on their property which diverted the flow of water from two drainage pipes under a new highway constructed in the City of Henderson. Appellants counterclaimed and sought an injunction against the Commonwealth. The Chancellor found in favor of the latter.

Appellants owned a 70-acre tract. The Commonwealth condemned an 8-acre strip running from north to south for the construction of a limited access highway. This left a landlocked area of 8 acres on the east side of the highway. When it was constructed, two drainage pipes were built to carry water from the east side to the west side. One was 24 inches in diameter and the other 18 inches. Water flowing through these pipes was cast onto appellants' land on the west. Appellants claim that by virtue of the accelerated flow deep ditches were cut in their property and a flooding condition was created.

To stem the tide appellants built embankments opposite the western openings of these two drainage pipes, thereby backing water up on the highway. It is these embankments the Chancellor ordered removed. It is appellants' contention that the Commonwealth had no right to cast this surface water on their land through the drainage pipes and they requested an injunction compelling the Commonwealth to channel the flow in a different direction.

There is a sharp issue of fact as to whether, prior to the construction of the highway, surface waters naturally drained from land on the east to appellants' property in the area where the 24-inch pipe is located. Appellants' evidence was that there was no east-west natural drainage at this point. On the other hand, witnesses for the Commonwealth testified that prior to the construction of the highway there was a drainage ditch ranging from one to four feet in depth at this point and that an area of approximately 8 acres to the east drained onto appellants' land. On the basis of testimony and topographical and engineering maps the Chancellor found there had been a natural flow of surface water onto appellants' land at this point. Since there was substantial credible evidence to support this finding, we cannot say it was clearly erroneous.

With respect to the 18-inch pipe, admittedly the natural drainage at that point was from east to west on a gentle slope. However it is clear that the drainage pipe substantially accelerated the flow. The same may be said about the 24-inch pipe. It may be pointed out that as a result of appellants' protests, the Commonwealth partially sealed the eastern end of the 24-inch drainage pipe so that instead of draining an area of 8 acres it now accommodates a flow from an area of something over one acre.

On the theory that there was no natural drainage onto appellants' land at the point of the 24-inch pipe, appellants contend the Commonwealth has changed the direction of the natural flow and has in effect tapped additional territory and subjected their property to an additional servitude. The finding of the Chancellor with respect to the natural drainage course answers that argument.

The additional argument is made, however, that the Commonwealth had no right

with either pipe to so accelerate the flow of water as to cause the serious damage of which appellants complain. Their evidence was to the effect they had never had a drainage problem before but after the highway was constructed the discharge from the 24-inch pipe caused a flooding condition and the discharge from the 18-inch pipe was cutting a deep gorge through their land. The Chancellor apparently took the view that since the Commonwealth was not tapping an additional source of surface water, it had the right to accelerate the flow by the construction of drainage pipes without regard to the damage caused. (The Chancellor also intimated that in the prior condemnation suit appellants had been compensated for the potential water damage that would be caused by the construction of the highway, a matter we will discuss later in this opinion.) Reliance was placed upon Wallace v. Schneider, 310 Ky. 17, 219 S.W.2d 977. The difficult question presented, which has both legal and equitable aspects, requires a re-examination of surface water rights in Kentucky.

We will assume (as do the parties) that the Commonwealth stands in the position of an adjoining property owner. The conflicting rights of such parties at an earlier time led to the development of two doctrines which were almost diametrically opposed. Under the "common enemy" doctrine each landowner had the right to dispose of surface water on his land in any manner he saw fit, regardless of the adverse consequences to his neighbor. Under the "civil law" doctrine, while the lower owner was bound to accept natural drainage from the upper owner, the upper owner had no right, by artificial means, to change or increase the normal flow. It was soon found that the strict application of either doctrine would often cause an inequitable result as between the parties, and neither theory took into account the socially desirable uses of the property or the extent of damage one property owner might cause his neighbor. For this reason exceptions and modifications gradually infused the doctrines and

there evolved a flexibility in their application. For a history of the developments in this field, attention is called to 59 A.L.R.2d 421.

In one of our earlier Kentucky cases, Pickerill v. City of Louisville, 125 Ky. 213, 100 S.W. 873, we purported to adopt the "civil law" doctrine, although the opinion recognizes that formerly the "common law" ("common enemy") principle had been applied. That case involved a situation (which naturally develops under the "common enemy" concept), quite similar to the one before us, where the upper property owner ditches his land to rid himself of surface water and the lower owner, to avoid the consequences, throws the water back by obstructing the flow with an artificial embankment. In the opinion we stated the rule to be (page 876 of 100 S.W.):

"* * * the owner of the upper ground has no right to make excavations, barriers, or drains upon his ground by which the flow of surface water is diverted from its natural channel and a new channel made on the lower ground, nor can he collect into one channel waters usually flowing off into his neighbor's land by several channels, and thereby increase the flow upon the lower ground."

The same principle was followed in Gott v. Franklin, 307 Ky. 466, 211 S.W.2d 680, where we held the plaintiff had no right by artificial means (the tiling of a garden) to collect water and cause it to flow onto neighboring property in accelerated and larger quantities. Here again we substantially applied the "civil law" doctrine.

The following year the case of Wallace v. Schneider, 310 Ky. 17, 219 S.W.2d 977, was decided. There the defendant, in establishing a subdivision, graded the land, built roads, gutters and sewers, and thereby accelerated the flow of water onto plaintiff's property. The applicable law was thus stated (page 980 of 219 S.W.2d):

"The owner of the dominant estate may *drain and ditch his land* for the pur-

pose of ridding it of surface water even to the extent of building sewers, gutters, and culverts without liability to the owner of the servient estate, *even though such methods of ridding his own property of surface water causes such water to be accelerated in its flow onto the servient estate,* so long as he does not tap additional territory from which surface waters otherwise would not have flowed through the natural drain in which the ditches, gutters, sewers, or culverts are constructed." (Emphasis added)

This would appear to be a modified "common enemy" doctrine.

In the later case of Rutherford v. Louisville & Nashville R. Co., Ky., 243 S.W.2d 1017, the defendant railroad company had dug a new ditch, or widened an old one, on its right-of-way, whereby a greatly accelerated flow of water was channeled through a 24-inch culvert emptying into a ditch on property adjoining the plaintiff's land and caused a flooding condition. We held the defendant could not unreasonably subject plaintiff's property to a servitude involving more than the absorption of the natural flow of water, and the owner of the lower estate could recover damages from the owner of the upper estate (page 1018 of 243 S.W.2d):

"* * * if the latter *unreasonably* changes the natural course of the water *or causes it to collect and be cast upon the lower estate in an unnatural volume or in an unusual or swift stream;* * * * or if he collects in one channel waters usually flowing onto his neighbor's land by several channels and thereby increases the flow on the lower ground." (Emphasis added)

It will be noted this opinion uses the terms *"unreasonably"*, *"unnatural"* and *"unusual."* Our prior opinions had not made reference to such factors. Recognition of their significance established a middle ground principle between the "common enemy" doctrine (which favors the upper

owner) and the "civil law" doctrine (which favors the lower owner). In the recent case of Commonwealth, Dept. of Highways v. Robbins, Ky., 421 S.W.2d 820, we determined that the Commonwealth had "unreasonably" diverted surface water from its natural course of drainage. Thus in Kentucky we have developed a "reasonable use" rule, which is followed in other states. See Bassett v. Salisbury Mfg. Co., 43 N.H. 569, 82 Am.Dec. 179; Bush v. City of Rochester, 191 Minn. 591, 255 N.W. 256; Armstrong v. Francis Corp., 20 N.J. 320, 120 A.2d 4, 59 A.L.R.2d 413; and Weinberg v. Northern Alaska Development Corp., Alaska, 384 P.2d 450.

In substance the rule balances the reasonableness of the use by the upper owner against the severity of damage to the lower owner, and is identical with the principle we had adopted in determining the existence of a nuisance. In Louisville Refining Company v. Mudd, Ky., 339 S.W.2d 181, 186, we said:

"* * * we accept the proposition that the existence of a nuisance must be ascertained on the basis of two broad factors, neither of which may in any case be the sole test to the exclusion of the other: (1) the reasonableness of the defendant's use of his property, and (2) the gravity of harm to the complainant."

In fact, our problem is a nuisance problem. See Pickerill v. City of Louisville, 125 Ky. 213, 100 S.W. 873; Commonwealth, Dept. of Highways v. Cochrane, Ky., 397 S.W.2d 155.

The difficulty of course lies in determining and applying the tests of reasonableness. To begin with, the lower owner has the servient estate and he must accept drainage from his neighboring upper owner. Also it must be recognized that any artificial utilization of land by the latter may, in some degree, affect the natural drainage on adjoining lower lands. Acceleration of the flow of surface water onto his lower neighbor often results when the upper

owner modifies his drainage system. Our problem is the extent to which this may be done without liability.

In Enderson v. Kelehan, 226 Minn. 163, 32 N.W.2d 286, 289, the principle involved and the pertinent considerations are thus set forth:

"As promulgated in the leading case of Sheehan v. Flynn, 59 Minn. 436, 61 N.W. 462, 26 L.R.A. 632, and as amplified by subsequent decisions, the rule is that in effecting a reasonable use of his land for a legitimate purpose a landowner, acting in good faith, may drain his land of surface waters and cast them as a burden upon the land of another, although such drainage carries with it some waters which would otherwise have never gone that way but would have remained on the land until they were absorbed by the soil or evaporated in the air, if

"(a) There is a reasonable necessity for such drainage;

"(b) If reasonable care be taken to avoid unnecessary injury to the land receiving the burden;

"(c) If the utility or benefit accruing to the land drained reasonably outweighs the gravity of the harm resulting to the land receiving the burden; and

"(d) If, where practicable, it is accomplished by reasonably improving and aiding the normal and natural system of drainage according to its reasonable carrying capacity, or if, in the absence of a practicable natural drain, a reasonable and feasible artificial drainage system is adopted."

We believe this constitutes a sound approach to the problem and obviously requires consideration of all relevant factors and special circumstances in each particular case. Maryland followed the reasonable use doctrine in Whitman v. Forney, 181 Md. 652, 31 A.2d 630. For a discussion by the Maryland court, see Battisto v. Perkins, 210 Md. 542, 124 A.2d 288. In Keys v. Romley, 64 Cal.2d 396, 50 Cal.Rptr. 273, 412 P.2d 529, is a comprehensive discussion of the three rules. There the California court modified the civil law rule which that state follows by applying the reasonableness concept.

Though appellants argue to the contrary, we do not have in this case the tapping of a new watershed, as appeared in Commonwealth, Dept. of Highways v. Roundtree, Ky., 372 S.W.2d 804, and was referred to in the above quotation from the Schneider case.[1] While the Commonwealth actually tapped a new source in constructing a median strip catch basin, there was a substitution of this surface water for that formerly draining from an 8-acre area through the 24-inch pipe, and from a practical standpoint the tapping of the new source did not itself increase the volume of water flowing toward appellants' land. The narrow question involves the extent to which the Commonwealth, by an artificial drainage system, may lawfully accelerate the flow of surface water onto appellants' land in a natural drainage direction.

If the Commonwealth was creating a nuisance, it was taking an easement over appellants' land for drainage purposes and the landowner would be entitled to compensation therefor as allowed in Bowling Green-Warren County Airport Bd. v. Long., Ky., 364 S.W.2d 167, or equitable relief as upheld in Pike County Board of Education v. Belfry Coal Corp., Ky., 346 S.W.2d 37. If, in the light of all the circumstances, the Commonwealth was not creating a nuisance, it was entitled to the relief granted.

While the Chancellor relied upon the Schneider opinion[2] (which has been somewhat qualified as herein pointed out), his opinion convinces us that he took into consideration those factors which we have heretofore indicated were relevant in deter-

---

1. Wallace v. Schneider, 310 Ky. 17, 219 S.W.2d 977.

2. Wallace v. Schneider, 310 Ky. 17, 219 S.W.2d 977.

mining the respective rights of the parties. Of significance was the public necessity for the construction of this highway and the engineering necessity for this type of drainage system according to accepted standards. Cf. Louisville and Jefferson County Air Bd. v. Porter, Ky., 397 S.W. 2d 146. Another consideration was the action taken by the Commonwealth in good faith prior to this suit to ameliorate the situation by sealing off a substantial source of flow through the 24-inch drainage pipe.

■ Of some significance was the prior condemnation suit between the parties. In that proceeding appellants were awarded $30,000 damages when the Commonwealth acquired a strip through their land for the construction of the highway. When that trial was held, the new road and the two culverts had been constructed. One of the appellants testified to the drainage condition created and pointed out how it was damaging his property. In the closing argument his counsel commented on this element of damage. The Chancellor therefore properly assumed (as he noted in his opinion) that the $30,000 award for the land taken included compensation for the accelerated flow created by these drainage pipes.[3]

■ In our opinion the Chancellor properly balanced the equities between the parties and we find no error in his judgment.

The judgment is affirmed.

WILLIAMS, C. J., and HILL, PALMORE, MILLIKEN, and STEINFELD, JJ., concur.

Dissenting opinion by OSBORNE, J., in which MONTGOMERY, J., joins.

---

3. When the Commonwealth is actually taking an easement for drainage or other purposes, the pleadings and the judgment should so provide. See Bowling Green-Warren County Airport Bd. v. Long, Ky., 364 S.W.2d 167.

## DISSENTING OPINION

OSBORNE, Judge.

It appears that the holding of the trial court which is affirmed by the majority opinion herein is to the effect that the dominant tenement is free to release surface water upon the servient tenement in any quantity or with any force that it chooses so long as an additional source of water is not tapped. The same applies to the acceleration of flow. In affirming this revolutionary principle the majority opinion turns to the courts of Minnesota for authority. Enderson v. Kelehan, 226 Minn. 163, 32 N.W.2d 286.

The respective rights of property holders as they relate to the use and disposition of surface waters greatly differ in the several states. The reason for this being that problems pertaining to surface water vary with the difference in rainfall, soil texture, steepness of slope and many other factors. What is a problem in one state is not a problem in another. For this reason, the law of Arizona would differ from the law of Florida, etc. Over a period of years, each state has developed its set of rules controlling the use and disposition of surface water. We have done this in Kentucky and have adopted what is known as the "civil law doctrine" which holds that while the lower owner is bound to accept natural drainage from the upper owner, the upper owner has no right by artificial means to change or increase the normal flow of water or to accelerate the flow at any one point in such manner as to unreasonably damage the lower owner. Jarvis v. Cornett, Ky., 257 S.W.2d 524; Gott v. Franklin, 307 Ky. 466, 211 S.W.2d 680; Cissell v. Grimes Investments Inc., Ky., 383 S.W.2d 128, citing 87 C.J.S. Trespass § 106; Com., Dept. of Highways v. Roundtree, Ky., 372 S.W.

2d 804; Louisville & N. R. Co. v. Bush, Ky., 336 S.W.2d 578; Rutherford v. Louisville & N. R. Co., Ky., 243 S.W.2d 1017; Wallace v. Schneider, 310 Ky. 17, 219 S.W.2d 977; Lewallen v. Davenport, Ky., 255 S.W.2d 16; Board v. Schneider, 301 Ky. 289, 191 S.W.2d 418; Newport News & M. V. Co. v. Wilson, 16 Ky.Law Rep. 262; Franz v. Jacobs, 183 Ky. 647, 210 S.W. 163; Kraver v. Smith, 164 Ky. 674, 177 S.W. 286; Smith v. Wathen, 156 Ky. 820, 162 S.W. 88; Raleigh v. Clark, 114 Ky. 732, 71 S.W. 857, 24 Ky.Law Rep. 1554; Stone v. Ashurst, 285 Ky. 687, 149 S.W.2d 4; Board of Trustees of Town of Auburn v. Chyle, 256 Ky. 283, 75 S.W.2d 1039; Steinke v. North Vernon Lumber Co., 190 Ky. 231, 227 S.W. 274; Wharton v. Barber, 188 Ky. 57, 221 S.W. 499; Louisville & N. R. Co. v. Stephens, 188 Ky. 1, 220 S.W. 746; Pickerill v. City of Louisville, 125 Ky. 213, 100 S.W. 873, 30 Ky.Law Rep. 1239; Robertson v. Daviess Gravel Road Co., 116 Ky. 913, 77 S.W. 189, 25 Law Rep. 1114; Bonte v. Postel, 109 Ky. 64, 58 S.W. 536, 22 Ky.Law Rep. 583, 51 L.R.A. 187; Grinstead v. Sanders, 56 S.W. 665, 22 Ky. Law Rep. 51.

This is a well-settled principle in this state and well defined though there is some unfortunate language in a few isolated cases which can not be avoided when the question is written on by so many different individuals over such a long period of time. The law generally is well settled. No later than last week the principles enunciated in the above cases were reaffirmed by this court. Commonwealth, Department of Highways v. Robbins, Ky., 421 S.W.2d 820. The majority opinion herein can do nothing but inject confusion and consternation.

For the foregoing reasons, I respectfully dissent.

MONTGOMERY, J., joins in this dissent.