Charles Thomas **WALKER** and Joyce **Walker, Appellants,**

v.

Eugene B. **DUBA** and Dorothy **Duba, Appellees.**

No. 2003–CA–001820–MR.

Court of Appeals of Kentucky.

Oct. 29, 2004.

Rehearing Denied Jan. 7, 2005.

Discretionary Review Denied by Supreme Court May 11, 2005.

---

**14.** KRS 413.180(2).

**15.** *See Gray, supra,* at 64 (Combs, J., dissenting).

Charles Thomas Walker, pro se, Joyce L. Walker, pro se, Louisville, KY, for appellants.

Wayne J. Carroll, J. Scott Sweeney, Louisville, KY, for appellees.

Before SCHRODER and TACKETT, Judges; EMBERTON, Senior Judge.[1]

## OPINION

SCHRODER, Judge.

This appeal discusses the rights and obligations of an upper elevation owner in ridding itself of diffused surface waters onto lands below. Kentucky has adopted the "reasonable use" rule which is a modification of the "common enemy" doctrine. The reasonableness of a land owner's actions is an issue of fact and the trial court's findings will not be reversed absent an abuse of discretion. We see no abuse of discretion and affirm.

Eugene and Dorothy Duba own a lot and house on a hillside in a subdivision in Jefferson County. Below their property is a lot and house belonging to Charles and Joyce Walker. Across the street from the houses is Iroquois Park. Behind their houses are other developed subdivision lots. Apparently, when the subdivision was developed, there was no storm water drainage system constructed in the subdivision on the parties' lots except for a ditch at the front of their lots fronting on Park Road. When it rains or when snow melts, diffused surface waters comes down the hill in Dubas' and other's back yards and front yards, draining into the Walkers' which is at a lower elevation. Water also comes from Iroquois Park across the street into the lots on Park Road. Some of the homes have a curb along the road to divert the sheet water from Iroquois Park. The Walkers do not have a curb in front of their driveway and consequently their lot gets more of the Iroquois Park water than their neighbors. Also, at one time there was a ditch along the road to collect diffused surface waters but accretions seemed to have filled it in. As a result, after a rain or when the snow melts, both the Duba and Walker lots receive lots of water everywhere. In an attempt to eliminate their water problems, the Dubas added some topsoil and sod which sloped the water away from their house, cleared up some rutting in their yard, and eliminated some standing water. However, when it rains, the Dubas' sump pump still kicks on and pumps out water that leaked into their house. The Walkers get all the Dubas' water, plus all the water dumped on the Dubas' property by upper elevation land owners, as well as the park runoff across the street.

The Walkers sued the Dubas for damages caused by the water coming from the Dubas' property. The trial court dismissed holding that as a matter of law, the Walkers' estate was a servient estate which had to accept drainage from upper elevation owners and that the Walkers had the burden to show the Dubas acted unreasonably in maintaining their property or that the Dubas *unreasonably* diverted water from its natural course onto the Walkers' property. On appeal, the Walkers claim the Dubas raised the elevation of their lot, filled in ditches, and pumped water out of their basement, so as to divert

---

1. Senior Judge Thomas D. Emberton sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

excess water onto the Walkers' property, all in an unreasonable manner.

In *Klutey v. Commonwealth, Department of Highways*, Ky., 428 S.W.2d 766 (1967), our Supreme Court switched from the "common enemy" doctrine to the rule of "reasonable use." The rule of "reasonable use" balances the "common enemy" doctrine (which favors the upper owner) and the "civil law" doctrine (which favors the lower owner). *Id.* at 769. Under the "reasonable use" rule, the Court views the diffused surface water as a nuisance problem and attempts to balance the "reasonableness of the use by the upper owner against the severity of damage to the lower owner...." *Id.*

> The difficulty of course lies in determining and applying the tests of reasonableness. To begin with, the lower owner has the servient estate and he must accept drainage from his neighboring upper owner. Also it must be recognized that any artificial utilization of land by the latter may, in some degree, affect the natural drainage on adjoining lower lands. Acceleration of the flow of surface water onto his lower neighbor often results when the upper owner modifies his drainage system. Our problem is the extent to which this may be done without liability.

*Id.* at 769–770.

The Court went on to review how other states tested reasonableness and decided Minnesota's approach, as set out in *Sheehan v. Flynn*, 59 Minn. 436, 61 N.W. 462, 26 L.R.A. 632 (1894), was the best approach and adopted its rule and test:

> [T]he rule is that in effecting a reasonable use of his land for a legitimate purpose a landowner, acting in good faith, may drain his land of surface waters and cast them as a burden upon the land of another, although such drainage carries with it some waters which would

otherwise have never gone that way but would have remained on the land until they were absorbed by the soil or evaporated in the air, if

> (a) There is a reasonable necessity for such drainage;

> (b) If reasonable care be taken to avoid unnecessary injury to the land receiving the burden;

> (c) If the utility or benefit accruing to the land drained reasonably outweighs the gravity of the harm resulting to the land receiving the burden; and

> (d) If, where practicable, it is accomplished by reasonably improving and aiding the normal and natural system of drainage according to its reasonable carrying capacity, or if, in the absence of a practicable natural drain, a reasonable and feasible artificial drainage system is adopted.

*Klutey*, 428 S.W.2d at 769–770 (quoting *Enderson v. Kelehan*, 226 Minn. 163, 32 N.W.2d 286, 289 (1948)).

In *Commonwealth, Dept. of Highways v. S & M Land Co., Inc.*, Ky., 503 S.W.2d 495, 497 (1972), the Court recognized Kentucky used the "reasonable use" rule of *Klutey* and said the "reasonableness of use of the land by the upper owner against the harm to the lower owner resulting from such use is a matter for the jury." *Id.* Justice Keller, in his opinion (concurring in part and dissenting in part) in *Mason v. City of Mt. Sterling*, Ky., 122 S.W.3d 500, 512 (2003), recognized *Klutey* and *S & M Land Co., Inc.* are still the law in Kentucky.

The reasonableness of the Dubas' actions was tried to the bench and the trial court made findings: that the Dubas were the upper elevation owners dealing with a drainage problem that existed for many years, even before the parties moved into the neighborhood; that the Walker prop-

erty was the lower property which by gravity would have to accept the water from above; that the Dubas did not add additional water to the drainage; that a lack of a curb in front of the Walker property contributed to drainage from Iroquois Park across the street; and that the Dubas did nothing unreasonable in diverting water from its natural course. We agree.

A review of the records, including the pictures, clearly shows the topography of the area which reveals that even before the houses were built, water ran down the hill. Both the Dubas' lot and the Walkers' lot received concentrations of diffused surface water from the *area* every time it rained. The Dubas' house sits higher on their lot and they had some success with sloping the water away from the house, raising the elevation in parts of the low areas, and adding sod to slow down the flow. However, even these measures apparently were not enough because when it rains, water still gets into the Dubas' basement and the sump pump has to pump it out. There does not appear to be any drainage pipe or ditches on the Dubas' lot which concentrates the flow unreasonably toward the Walkers' foundation, etc. The Dubas are not creating the Walkers' problems and subsequent damages. A lack of a storm water drainage system in the *area* appears to be the real culprit. Therefore, the trial court's findings were not clearly erroneous, and an appellate court will not set aside a trial court's findings unless they are clearly erroneous. CR 52.01; *Sherfey v. Sherfey,* Ky.App., 74 S.W.3d 777, 782 (2002), *cert. denied,* 537 U.S. 1110, 123 S.Ct. 892, 154 L.Ed.2d 782 (2003); *Vinson v. Sorrell,* Ky., 136 S.W.3d 465, 470 (2004). The need for or lack of permits, the neighborhood hostilities, and housing code violations are all moot and need not be discussed for resolution of this case.

For the foregoing reasons, the judgment of the Jefferson Circuit Court is affirmed.

ALL CONCUR.